Joseph Rubinstein, Harriett Rubinstein, and Robert Rubinstein, a Minor, By Joseph Rubinstein, His Father and Next Friend, Plaintiffs-Appellants, v. Fred A. Coleman Co., and John D. McCaran, Defendants-Appellees.

Gen. No. 11,217.

Second District, First Division.

June 24, 1959.

Released for publication July 10, 1959.

Director & Liebenson, of Chicago (Harold A. Liebenson, Harry J. Director, John E. Harris, of counsel) for plaintiffs-appellants.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan (Daniel J. Dalziel, of counsel) for defendants-appellees.

JUSTICE McNEAL delivered the opinion of the court.

This action was brought by Harriett Rubinstein, Joseph Rubinstein, her husband, and Robert Rubinstein, their two-year-old son, against the owner and driver of a garbage truck, to recover damages for personal injuries sustained in a collision which occurred at the intersection of Marshman and Judson Streets in Highland Park, about 1:00 p. m. on October 7, 1955. The garbage truck was moving south on Judson Street and Mrs. Rubinstein was driving a Cadillac automobile west on Marshman Street. Joseph

and Robert Rubinstein were passengers in the automobile. In their complaint plaintiffs prayed for judgments for $100,000, $200,000 and $15,000, respectively, on account of defendants' negligent operation of the truck. No questions were raised on the pleading. Defendants denied plaintiffs' allegations of negligence and alleged that plaintiffs' injuries were the result of the negligent acts of Harriett Rubinstein, individually and as the agent and servant of Joseph Rubinstein.

The issues were submitted to a jury which returned verdicts finding defendants not guilty as to the claims of Joseph and Harriett Rubinstein, but guilty as to the claim of Robert Rubinstein and assessing his damages at $37.50. The jury also answered a special interrogatory that defendant McCaran was guilty of negligence at the time and place of the collision. Judgments were entered on the verdicts, plaintiffs' post-trial motions were denied, and this appeal followed.

On appeal plaintiffs contend that the trial court erred in its rulings on the admission of evidence, and that the jury was improperly instructed, i. e. plaintiffs' instructions 1, 12 and 13 should have been given, defendants' instructions 15 and 16 should not have been given, and the court erred in giving defendants' instructions 7, 9, 10, 15, 16 and 20 because they were directory.

Plaintiffs' instructions 1, 12 and 13 and defendants' instructions 7, 9, 10, 15 and 20 were set forth verbatim in Rubinsteins' post-trial motion, but the motion contains no reference to defendants' 16th instruction, no specific objection to or reason why instructions 7, 9, 10, 15 and 20 were erroneous, and no specification of which six of defendants' instructions were claimed to be directory. Further, according to the abstract, the sole reference to anything resembling a conference on instructions are the words: "Colloquy pertaining to

120

instructions," opposite reference to pages 416 to 443 of the record.

■ The abstract should present every error relied upon for reversal, and everything necessary to decide the questions raised, in such manner that it will not be necessary for the court to resort to the record. Alleged errors not shown by the abstract of the record, or based on facts or matters not appearing therein, will not be considered on review. 2 I.L.P. 444, 462, Appeal and Error 483, 512. The abstract should be sufficient to present fully every error relied upon. Appellate Court Rule 6. A court of review is not required to go to the record to reverse, although it may search the record regardless of the abstract in order to affirm. Richman Chemical Co. v. Lowenthal, 16 Ill.App.2d 568, 571, 149 N.E.2d 351, 353.

■■ We have held that a party will not be heard to complain of alleged errors in instructions where such errors were not called to the trial court's attention by specific objections made either at the conference on instructions or in a post-trial motion. Arboit v. Gateway Transportation Co., 15 Ill.App.2d 500, 512, 146 N.E.2d 582; Onderisin v. Elgin, J. & E. Ry. Co., 20 Ill.App.2d 73, 77, 155 N.E.2d 338. Since plaintiffs' abstract wholly fails to show whether or not they made specific objections to any of defendants' instructions at the conference and their post-trial motion contains no specific objections to such instructions, we consider that plaintiffs' objections to instructions given for defendants are not properly presented or preserved for review.

■■ Plaintiffs' refused instruction 1 sets forth the allegations contained in plaintiffs' complaint and defendants' answer and concludes with a peremptory instruction to the jury to find for plaintiffs if they proved by a preponderance that defendants were

guilty of one or more of the several "wrongful acts" set forth in the complaint. This instruction consists of about 500 words and covers about two pages of abstract. In Signa v. Alluri, 351 Ill. App. 11, the Court said that the safe and proper way to acquaint the jury with the issues is for "the court to inform the jury in a clear and concise manner of the issues raised by the pleading. This should be accomplished by a *summary* of the pleadings, succinctly stated without repetition and without undue emphasis." We have carefully examined this instruction and are of the opinion that it does not comply with the standards set in Signa v. Alluri, and that the trial court committed no error in refusing to give it to the jury.

█ Refused instructions 12 and 13 tendered by plaintiffs were based upon section 68, Art. IX of the Uniform Act Regulating Traffic on Highways (Par. 165, Ch. 95½ Ill. Rev. Stat.), prior to the 1953 amendment. Before such amendment, this section provided that vehicles shall give the right-of-way to vehicles approaching along intersecting highways from the right and shall have the right-of-way over those approaching from the left. After amendment, the section required the driver of a vehicle approaching an intersection to yield the right-of-way to a vehicle which has entered the intersection, and provided that when two vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. The court gave defendants' instructions 22 and 23, which correctly informed the jury as to the right-of-way at the intersection according to the provisions of the statute in force on the date of the collision. The provisions of a prior statute respecting the right-of-way at the intersection involved were not applicable or material on the trial of this cause. The trial court properly refused plaintiffs' instructions 12 and 13.

Defendant McCaran testified that on the day of the collision he was driving a white garbage truck, 25 feet long, 9 feet high, and weighing 13,000 pounds. He stopped the truck on Judson Street about half a block north of its intersection with Marshman. He was proceeding on Judson to his next stop about 100 feet south of the intersection, and traveling about 10 miles an hour. He looked to his left down the intersecting street as far as he could see, and saw no one. He looked to his right and nobody was coming. When he was 20 feet from Marshman he looked to his left again and then saw the Rubinstein auto about 200 feet away, traveling about 40 miles an hour. He immediately applied his brakes. The Cadillac continued in a straight course and at the same speed. The truck was almost stopped at the time of the impact. The right side of the bumper on the truck struck the right rear fender on the Cadillac. The impact knocked the rear of the Cadillac in a half circle around to the south, so that the car was facing east on Marshman about 150 feet from the intersection. There were no skid marks east of the intersection. The truck made skid marks about 12 feet long which ran up to its front wheels. The skid marks were in the southbound lane and ended about 3 or 4 feet from the center of Marshman.

Joseph Rubinstein was on the right front seat of the car. He testified that he was looking southeast or to the side and partly to the rear. Shortly before the impact he heard a noise and turned around to protect his son seated on the rear seat.

Harriett Rubinstein was the only other occurrence witness. She testified that she was driving her husband's 1952 Cadillac. They had just left 4 or 5 children at a school about 2½ blocks from the scene of the accident, and she was taking her husband to his office in Highland Park. She entered Marshman a block

east of the intersection where the accident occurred, and traveled straight west on Marshman about 20 miles an hour. When she was about five car lengths from the intersection, the truck was eight car lengths away. When she entered the intersection, going about 5 miles an hour, she saw the truck about three car lengths to her right, traveling at medium speed. She increased her speed to 10 to 15 miles an hour at the time of the impact. The front end of the automobile was about half a car length past the intersection when struck by the truck. The impact spun the auto around so it was facing east about a car and a half from the intersection.

On cross-examination Mrs. Rubinstein admitted that in her deposition she had stated that when she first saw the truck it was 250 feet away and she was then 150 to 200 feet from the intersection, that she was a little confused, and that she had also said that she was about two houses or about 50 feet east from the corner when she first saw the truck. Thereafter, on redirect examination, plaintiffs' attorney attempting to have Mrs. Rubinstein explain her answers, questioned her in part, as follows: Can you tell us why you estimate in car lengths? What, if anything, do you notice about yourself in determining distance? You mentioned . . . that you were confused. Could you explain to us what you meant by that? To each of these and similar questions the trial court sustained objections, and stated that the questions call for mental operations of the witness, that she would be permitted to state facts, but not what goes on in her mind. The court committed no error in sustaining objections to these questions.

Appellants also contend that the court erred in refusing to permit their attorney to cross-examine defendants' examining physician as to who paid him for making physical examinations of the plaintiffs. Dur-

124

ing cross-examination, plaintiffs' counsel asked the doctor for permission to see his notes concerning the examinations, and it appears from his statements to the court in support of his subsequent motion to withdraw a juror, that counsel had ascertained from the doctor's notes that he was paid by a casualty insurance company. Defendants' attorney stated that the examinations were made at his request and paid for through him, and he offered to so stipulate, but plaintiffs' counsel refused the offer.

 Appellants rely upon Allen B. Wrisley Co. v. Burke, 203 Ill. 250, 258, wherein the Court said: "The fact that in developing the proof that the witness was employed and paid to make the examination it incidentally appeared he was paid by an accident company does not constitute error demanding reversal of the judgment." We think that the distinction between an incidental or inadvertent reference to insurance coverage and a deliberate or premeditated disclosure of such coverage to the jury on the trial of an automobile collision case is one of the elements to be considered in determining whether such reference or disclosure constitutes error or prejudicial and reversible error on the trial of such a case. In Tir v. Shearn, 2 Ill.App.2d 257, 264, the Court found no error in the trial court's action in cautioning the parties against injecting insurance into the case and in directing witnesses to use the word "defendant" instead of "insurance company," when interrogated as to the person for whom they were obtaining statements. In the instant case the interest of the doctor as a witness employed by defendants was disclosed to the jury. Plaintiffs were not prejudiced by the trial court's refusal to permit the injection of insurance into the case or the disclosure to the jury that defendants' physician was paid by a casualty company for making physical examinations of the plaintiffs.

125

■ ■ Appellants' final contention is that the court erred in refusing to admit Dr. Rubinstein's office records to be received in evidence on rebuttal. If these records were material on the issue of the doctor's loss of earning, they were a part of his case in chief. The court committed no error in refusing to permit plaintiff to cumulate his evidence in chief under the guise of rebuttal. Further, Dr. Rubinstein was not harmed by the exclusion of this evidence pertaining to his alleged damages, since the jury found that he was not entitled to recover any damages on account of his contributory negligence.

We find no reversible error in the record, and therefore the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

SPIVEY, P. J. and DOVE, J., concur.