Mary Busser, Plaintiff-Appellant, v. Donald Noble, Harold K. Pieper, Administrator of the Estate of Donald E. Pieper, Deceased, Jack Schlueter, Harold F. Considine, John L. Moore, Ruth K. Carney, Frank Dempsey and Violet Dempsey, Defendants-Appellees.

Gen. No. 11,175.

Second District, First Division.

April 29, 1959.

Rehearing denied October 7, 1959.

Released for publication October 7, 1959.

Warner & Warner, of Dixon (George F. Nichols, of counsel) for plaintiff-appellant.

Wyatt Jacobs and Jacobs, Miller, Rooney & Lederleitner, of Chicago (Joseph B. Lederleitner, William L. Eifrig, of counsel) for John L. Moore and Ruth K. Carney, defendants-appellees.

Moran, Klockau, McCarthy & Johnson, of Rock Island (Bernard J. Moran and Frank G. Schubert, of counsel) for Harold F. Considine and Frank Dempsey, defendants-appellees.

Burrell & Holtan, of Freeport (David M. Burrell, of counsel) for Donald Noble, appellee.

Dixon & Gunner, of Dixon (William R. Gunner, of counsel) for Jack Schlueter, appellee.

Dixon, Devine & Ray, of Dixon, and Peterson, Lowry, Rall, Barber & Ross, of Chicago (Sherwood Dixon, George K. Ray, Luke R. Morin, of counsel) for said defendant-appellee.

PER CURIAM.

On October 18, 1952, about 12:30 a. m., the plaintiff, Mary Busser, was a guest passenger in a vehicle driven by Donald Pieper. The vehicle was traveling north on Route 26 about 2½ miles south of Dixon, Illinois, where it collided with one driven in the opposite direction by Donald Noble. Shortly thereafter Robert Lizer drove his car in a northerly direction around the two damaged vehicles, and Jack Schlueter drove his car in a southerly direction into the wrecked vehicles. All of the drivers and passengers in the vehicles involved were minors. As a result of the collision Pieper was killed and plaintiff was injured.

To recover damages for her personal injuries plaintiff filed a twelve-count complaint against the drivers

of the vehicles and the operators and owners of certain taverns. Counts I, II, III and IV were directed against drivers Noble, Lizer, Schlueter, and the administrator of driver Pieper's estate, respectively. Pieper was charged with wilful and wanton misconduct, and the other drivers with negligence. The rest of the counts were directed against tavern operators or owners. Recoveries under section 14, Art. VI of "An Act relating to alcoholic liquors," (Sec. 135, Ch. 43, Ill. Rev. Stat.) were sought against Harold Considine in count V and against John Moore in count VII, on the ground that they furnished alcoholic liquor to Pieper and contributed to his intoxication, in count IX against Ruth Carney as the owner of the premises operated by Moore, and in Count X against Frank Dempsey because he furnished liquor which contributed to Noble's intoxication. In count XII it was alleged that Dempsey had conveyed his tavern to Violet Dempsey in order to defraud his creditors, and plaintiff prayed that the conveyance be decreed void as to her. Under counts VI, VIII and XI against Considine, Moore and Dempsey, respectively, recoveries were sought upon alleged violations of section 12, Art. VI of "An Act relating to alcoholic liquors," (Sec. 131, Ch. 43, Ill. Rev. Stat.), in selling, giving or delivering alcoholic liquor to the minors, Pieper and Noble. Counts VII and VIII were before this court on a previous appeal, and a default judgment entered by the circuit court against Moore on those counts was reversed and remanded in 8 Ill. App.2d 268.

After remandment to the circuit court, counts V, VII, IX and X were severed, certain counts were amended, answers filed, and the cause proceeded to trial on the counts against the drivers and the counts based upon the unlawful sale of liquor to minors. Lizer was dismissed as a defendant in count II on plaintiff's motion. At the conclusion of plaintiff's ev-

437

idence, the trial court directed the jury to return verdicts finding all defendants not guilty. On July 26, 1957, the court ordered that judgment be entered on the verdict and that all remaining counts be continued for trial at a time to be set by the court. On December 23, 1957, plaintiff's post trial motion for a new trial was overruled and judgments were entered in favor of all defendants in counts I, II, III, IV, VI, VIII, XI and XII. Defendants in the severed counts moved to dismiss the counts against them on the ground that certain controlling issues therein had been decided by the adjudication on the other counts. The court allowed the motions to dismiss and then entered a similar judgment in favor of the defendants in counts V, VII, IX and X. This appeal followed.

Defendant Noble suggests that the appeal should be dismissed because the record fails to show the entry of final judgments. We have examined the transcript and find that the order made on July 26 was not a final judgment, but that entries made on December 23 provide that the named defendants go hence without day and that they recover from the plaintiff their costs of suit. These entries are sufficient to constitute final and appealable judgments.

Defendants Considine and Dempsey question the propriety of taking a single appeal from two judgments. The first judgment on December 23 was entered on verdicts returned in favor of all defendants pursuant to a peremptory instruction as to certain counts, and the second judgment was entered on motion of some of the same defendants to dismiss other counts in the same complaint. Both judgments were entered on the same day. Under such circumstances we are of the opinion that a single appeal was sufficient and that the record of the two final judgments entered on December 23 is properly before us for re-

438

view. In any event we prefer to pass upon the merits and decide the real issue on this appeal, namely, whether it was proper for the trial court to direct a verdict for defendants. In order to decide this issue it is necessary to examine the evidence.

. The evidence shows that plaintiff, 17 years of age, went to a tavern on the evening in question with a girl friend and had some beer, the exact amount not being shown. This tavern was the Palms, operated by the defendant, John Moore. Later in the evening, Donald Pieper, aged 19, who had been to a football game. with some friends, met plaintiff at the Palms. He had some beer there. Thereafter the young people got into Pieper's car and went to the tavern operated by the defendant Considine. Pieper had a whiskey bottle in his car.

At Considine's tavern plaintiff again had some beer, the exact amount not being shown. There is some evidence that Pieper had 3 or 4 beers at Considine's and 3 mixed drinks. He became loud and boisterous and engaged in a violent argument about religion. He then went to his car and plaintiff followed him and they drove off after some altercation. They were followed shortly thereafter by some other young people riding in a car driven by Robert Lizer. Lizer testified that immediately prior to the accident Pieper was driving approximately 75 or 80 miles per hour and that as Pieper went over a bridge immediately before the collision his tail lights did not flash so as to indicate that he was applying his brakes.

In the meantime Robert Noble, driver of one of the other vehicles, had gone into a tavern operated by Frank and Violet Dempsey. Noble was accompanied by the witness Blackburn, and Blackburn purchased six cans of beer at this tavern. Noble had one can of beer. He was driving his vehicle in a southerly direc-

tion on Route 26 and a car driven by the defendant Jack Schlueter was also going south behind the Noble vehicle.

The Noble and Pieper vehicles collided violently north of the bridge and immediately thereafter the Schlueter car collided with the rear of the Noble car. Pieper was killed and the plaintiff was seriously injured. The evidence indicates that the Noble and Schlueter cars were on their own side of the highway after the collision. The Pieper car was partly in both lanes of the highway and there was some evidence indicating that the Pieper vehicle skidded nearly 400 feet prior to the impact.

Plaintiff attempted to testify that the Noble vehicle was over the center line just prior to the collision, but this evidence was rejected on the theory that plaintiff was an incompetent witness because one of the defendants was the administrator of the estate of Donald Pieper.

Based on the foregoing evidence the trial judge directed a verdict against the plaintiff on the counts directed against the three drivers, and also on the counts based upon the sale of intoxicating liquor to minors. On the basis of the same evidence, the trial judge entered a judgment upon the counts based upon the dram shop act which had previously been severed, the basis of this ruling being that the evidence showed that plaintiff was a participant in the drinking and consequently was barred as a matter of law from contending that she was an innocent party and entitled to invoke the dram shop act.

▆▆▆▆ The vital issue is whether the trial court should have entered a directed verdict, and in this connection it should be borne in mind that the right to a jury trial is a fundamental right. A party should not be deprived of his right to a jury trial if he has produced any evidence which proves or tends to prove

440

his claim, or from which reasonable inferences can be drawn which tend to support his claim. In determining the question, all of the evidence favoring the party must be regarded as true and it must be viewed in that light which is most favorable to said party. The question of whether the party has proved his claim by a preponderance of the evidence and the question of the credibility of the witnesses are not involved in determining whether a verdict should be directed, but such questions are questions of fact for the jury to decide. One of the leading cases along this line, and one which has been cited with approval by this Court and the Supreme Court of Illinois is the case of Lavender v. Kurn, 327 U. S. 645; 90 L. Ed. 916, 923, wherein the United States Supreme Court said:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

Tested in the light of the above rules, we believe that the question of whether the defendant Pieper was guilty of wilful and wanton misconduct should have been submitted to the jury. The evidence

441

that he was driving 75 or 80 miles per hour after consuming a substantial number of alcoholic drinks would certainly seem to make out a stronger case than was made out in Hering v. Hilton, 12 Ill.2d 559, wherein the Supreme Court, after a very careful analysis, held that the question was one for the jury. Likewise, although plaintiff was an incompetent witness insofar as her deceased driver was concerned, she was competent against the defendant Noble (Clark v. A. Bazzoni & Co., 7 Ill.App.2d 334, 338), and her testimony that Noble was over the center line at the time of the collision should have been admitted and would have made the question of whether he was negligent a question of fact for the jury. The same is true with respect to the defendant Schlueter, and the question of whether he was guilty of negligence in failing to keep a proper lookout to avoid the collision was a question of fact for the jury.

The questions as matters of law whether plaintiff was guilty of wilful and wanton misconduct insofar as her claim against her driver is concerned, whether she was guilty of contributory negligence insofar as the other drivers are concerned, and whether her participation in drinking barred recovery under her dram shop counts, are close and difficult questions.

In Anderson v. Launer, 13 Ill.App.2d 530, 537, the evidence showed that the driver and his guest had consumed a large amount of beer and liquor. The guest was killed in an accident and recovery was had in a wrongful death action. It was contended that the guest was guilty of wilful and wanton misconduct as a matter of law. The Court said:

"Defendant further contends that if he was guilty of wilful and wanton misconduct in driving the car while under the influence of liquor, then plaintiff's intestate was also guilty of the same misconduct in the same degree as a matter of law in that he par-

ticipated in the drinking which brought about defendant's condition and then subjected himself to the peril by voluntarily riding in the automobile. This question so far as it relates to an action under the guest act does not appear to have been passed upon by the courts of review of this state. A similar factual situation was present in Myers v. Krajefska, supra, but the point does not appear to have been raised or passed upon. In 15 A.L.R.2d 1165 (1951) there is an exhaustive annotation covering the question above raised. This annotation is supplemented by the current A.L.R. Supplement Service. An examination of many of the cases cited in the annotation leads us to conclude that under the evidence in the instant case, whether or not plaintiff's intestate was guilty of wilful and wanton misconduct in participating in the drinking and subjecting himself to the peril of riding with the defendant under the situation as here disclosed, was a jury question."

The trial court apparently felt that the evidence relating to plaintiff's drinking proved that she was not an innocent party and that as a matter of law she could not recover under her dram shop counts under any circumstances. While cases have been cited which indicate that a participant is barred as a matter of law, yet other cases indicate that the question is one of fact. In Taylor v. Hughes, 17 Ill.App.2d 138, 144, which involved an assault by an intoxicated person, the Court said: "The question of plaintiff's freedom from being an active and willing agent in procuring the intoxication of the injuring party, and the absence of provocation, are both questions of fact for the jury."

In DeLong v. Whitehead, 11 Ill.App.2d 330, the plaintiff was injured while riding in a motor vehicle as a guest and she brought a dram shop action. There was evidence that she had been in the

443

company of her driver while he was drinking and there was also some evidence that she had consumed one highball. The identical question raised in this case was raised in that case and after reviewing many authorities on the subject, the Court held that the question of whether plaintiff should be barred by her own conduct was a question of fact for the jury. After careful consideration of the record in the instant case, we believe that all of these questions should have been submitted to the jury.

■ The question whether a verdict should have been directed upon the counts based upon section 131 of the dram shop law prohibiting the sale of liquor to minors, also poses a difficult problem which apparently has never been passed upon by any court of review of this state. The closest case which has been called to our attention is that of Rogers v. Dwight, 145 F. Supp. 537, wherein the court was called upon to construe the Illinois law and to decide whether a complaint based upon section 131 stated a cause of action. The court held that a complaint based upon said section did not state a cause of action and that section 135 of the dram shop law affords an exclusive remedy. In Howlett v. Doglio, 402 Ill. 311, the Court indicated that recovery under section 135 is exclusive. By way of analogy, in Hall v. Gillins, 13 Ill.2d 26, the Court declined to permit a death action to be brought as an action at common law rather than under the wrongful death statute. For these reasons we hold that section 135 affords exclusive remedies for damages under the dram shop law, and that the circuit was correct in directing a verdict for defendants in counts VI, VIII and XI.

Insofar as her counts against the dram shops were dependent upon acts of certain alleged intoxicated drivers, plaintiff would have been bound by adverse final adjudications on her counts against such drivers.

444

However, having concluded that the trial court erred in directing verdicts and entering judgments against plaintiff on her counts against the drivers, it follows that she was not bound by such adjudications, and that the trial court erred in entering judgments against her on her counts based upon section 135 of the dram shop law.

Since a new trial of certain counts will be necessary, we wish to observe that our comments should not be taken as any expression of opinion as to the weight of the evidence or the strength or weakness of the several claims. Judgment of the Circuit Court of Lee County for defendants in counts II, VI, VIII and XI is affirmed, and judgment for defendants in counts I, III, IV, V, VII, IX, X and XII is reversed, and the cause remanded to said court for a new trial on said counts.

Affirmed in part, and reversed and remanded in part.