Andrew E. Taylor, Appellant, v. Elgin, Joliet & Eastern Railway Company, a Corporation, Appellee.

Gen. No. 48,086.

First District, Third Division.

March 1, 1961.

Supplemental Opinion, December 28, 1961.

Rehearing denied December 28, 1961.

Henslee, Monek & Murray, of Chicago (Robert E. Harrington and John J. Naughton, of counsel) for appellant.

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago (Harlan L. Hackbert, of counsel) for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This is a suit filed by Andrew E. Taylor, hereafter referred to as the plaintiff, against Elgin, Joliet & Eastern Railway Company, hereafter referred to as the defendant, under the Federal Employers' Liability Act (45 U. S. C. A. sec. 51 et seq.) to recover damages occasioned by the defendant's alleged negligence. The jury returned a verdict for the defendant upon which the court entered a judgment, from which this appeal is taken.

The plaintiff filed his complaint in November 1957, to which in December 1957 the defendant filed a general denial. In April 1959 the trial court entered an order denying the defendant leave to file an amendment to its answer. The case was assigned for trial, which commenced on May 7, 1959. The defendant asked leave to amend its answer. The amendment, filed on May 6, 1959, pleaded as an affirmative defense that the plaintiff had represented to the defendant that his only prior accidental injuries had been a broken arm sustained in farm work at Franklin, Tennessee in 1937, that he did not then have, nor did he ever have, dizzy or fainting spells, fits or injury to his back; that such representations were false in that in fact he had sustained previous injuries to his back of a serious nature in June and August 1950, "which injuries were diagnosed by the attending doctors as a ruptured intervertebral disc and narrowed

lumbosacral interspace, and he had suffered from chronic epilepsy" since 12 or 14 years of age; that his physical condition made the plaintiff unfit and unacceptable for employment; that the said misrepresentations were known to be false and were made with intent to deceive the defendant; that they were material, and that one of the conditions of his employment was that any misrepresentation or concealment of any facts respecting his physical condition was just cause for his rejection or immediate dismissal from service whenever discovered; that the defendant relied on the plaintiff's representations and had no knowledge of their falsity until subsequent to the commencement of the action; and that the "plaintiff was not rightfully or lawfully in the employment of the defendant at the time of his alleged accident." There is nothing in the record indicating whether the court did or did not grant leave to file the amendment.

On May 7, 1959 the plaintiff filed a motion to deny defendant's motion for leave to file an amendment to its answer, on the ground that the amendment does not present a sufficient affirmative defense, alleging, among other things, that the defendant has failed to prove that the previous injuries or previous physical conditions had any causal relation to the plaintiff's physical fitness to perform his duties or to the injuries that the plaintiff suffered. The court took the motion to deny defendant's requested leave to amend under advisement and permitted evidence to be introduced on the alleged defense. At the close of all the evidence the court heard arguments on plaintiff's motion, which became in effect a motion to strike the defense, and denied that motion. After a recess the court reconsidered its ruling and required the defendant to amend its amendment so as to allege a causal connection between the conditions allegedly misrep-

resented and the accident, and denied the plaintiff's motion in all other respects. On April 13, 1960, almost a year after the trial, the court entered an order permitting the defendant to file an amendment to the amendment in accordance with the court's order of May 13, 1959, which amendment was as follows: "that said prior back injury and said chronic epilepsy had a causal relation to the alleged accident of January 26, 1957, and the injuries claimed to have resulted therefrom." On April 14, 1960 the plaintiff filed a reply to the amended amendment to the answer.

At the trial of the cause, and after the court had ordered the defendant to file an amendment to its amendment to the answer, the court approved an instruction given by the defendant based upon the amended amendment to its answer. The plaintiff here contends that the court erred in submitting the affirmative defense to the jury and that the instruction given by the court with reference thereto was erroneous. The plaintiff also complains that another instruction given by the court at the request of the defendant was erroneous; that the trial court erred in denying the plaintiff's motion for a directed verdict at the close of all the evidence; and that the verdict was contrary to the manifest weight of the evidence.

The defendant contends that upon the evidence in the record the questions as to plaintiff's credibility, negligence and fraud in securing employment were for the jury, that the jury was correctly instructed, and that the evidence fully sustains its verdict.

At the very threshold it becomes incumbent on this court to resolve certain sharply disputed contentions. It is the theory of the plaintiff that at the close of all the evidence the court should not have permitted the defendant to amend the amendment to its answer since there was no evidence in the record indicating any causal connection between the prior injuries or

the physical condition of the plaintiff and the injuries in issue in the suit. We will discuss later the question as to whether there was such evidence in the record. The defendant contends with equal ardor that the trial court imposed on the defendant a greater burden of proof than is required under the law, that the defendant accepted that burden, and that the issue of causal relation was submitted to the jury and the evidence was sufficient to prove such a relationship. The defendant contends that under the law there was no necessity for it to file the amendment to its amended answer, that it is a complete bar to plaintiff's recovery in an F.E.L.A. case if it is found that the plaintiff in his application for employment concealed or misrepresented facts concerning his physical condition which were material in that they substantially affected the examining physician's conclusion that the applicant was in good health and in acceptable physical condition, and that they had a direct relation to the propriety of admitting the applicant to employment.

The defendant relies on Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock, 279 U. S. 410. The courts both in Illinois and elsewhere have differed sharply in their determination of the proper interpretation of that opinion and its effect upon contracts between employees and employers subject to the F.E.L.A. The Rock case originated in Illinois and is reported in 247 Ill. App. 600 (1928). It was an appeal from a judgment of the Circuit Court of Cook County for $15,000 in favor of plaintiff for injuries sustained while working as a switchman for the defendant. Suit was brought in the name of John Rock. The real name of the plaintiff was Joe Rock. He had applied to the defendant for employment as a switchman. In the first application he gave his right name—Joe Rock. In accordance with a rule and the practice of the defendant,

plaintiff was sent to the company's physician for physical examination. It was found that he had been treated surgically for ulcer of the stomach and removal of the appendix, and that at the time of the examination he had a rupture. His application was rejected because of his physical condition. He made a second application to the defendant under the name of John Rock. That application was not in the handwriting of the plaintiff, and when the time came for him to be physically examined he sent a man named Lenhart, who pretended to be the plaintiff and who underwent the physical examination. Thereafter the plaintiff was employed by the defendant company for about fourteen months. The defendant conceded that the physical condition of the plaintiff at the time of the accident did not contribute in any way to his injury. The court in an opinion written by Mr. Justice Scanlan rejects the case relied on by the defendant, Norfolk & W. R. Co. v. Bondurant's Adm'r, 107 Va. 515, 59 S. E. 1091, which lays down the rule that a party who obtains employment by falsely representing himself to be of age and who subsequently is injured in the course of such service by reason of the negligence of said company cannot recover although his infancy in no way contributed to his injury, and that he stands in the same position with the company as a trespasser or bare licensee to whom the company stands in no contractual relation and to whom the company owes no other duty than not to injure him recklessly, wantonly or wilfully. The Illinois Appellate Court cites and follows the case of Lupher v. Atchison, T. & S. F. Ry. Co., 81 Kan. 585, 106 P. 284, which holds that where the employee procures his contract of employment by false representations the contract is not void, and while the alleged fraudulent statements would afford grounds for avoidance or annulment of the contract of employment at the op-

tion of the company, until that contract was actually terminated by the company the relation of master and servant would legally continue and exist. The court also cites Payne v. Daugherty, 283 F. 353 (8th Cir.), which holds that a contract of employment fraudulently obtained does not permit a retroactive dissolution of the relation of master and servant but that such a contract, even if voidable, imposed upon the employer the legal duty of providing for the safety of the employee.

In the Rock case the Appellate Court affirmed the judgment of the trial court. The Illinois Supreme Court denied certiorari and the United States Supreme Court reversed the case in 279 U. S. 410. In that case the court says: "Respondent was an impostor." The court recites the facts and says that the defendant had a right to require applicants for work at its railroad to pass appropriate physical examinations, and that the plaintiff's physical condition was inadequate because of the rejection of his application. It further says: "The deception by which he subsequently secured employment set at naught the carrier's reasonable rule and practice established to promote the safety of employees and to promote commerce." It further holds that the plaintiff's position as employee is essential to his right to recover under the Act, that while he performed the work of a switchman for the defendant he was not of right its employee within the meaning of the Act, and that while his physical condition was not the cause of his injuries, it did have a direct relation to the propriety of admitting him to employment. "It was at all times his duty to disclose his identity and physical condition to petitioner. His failure to do so was a continuing wrong in the nature of a cheat."

Subsequent to the decision of the United States Supreme Court in the Rock case, the case of Ward v.

Elgin, Joliet & Eastern Ry. Co., 259 Ill. App. 672 (Abst.) was decided. This was a case where the plaintiff was injured while standing on a ladder of a moving train. He lost his balance because of a defective coupling pin lever, fell to the ground, and received the injuries complained of. At the time when he applied for employment no physical examination was required. In his application he falsely represented that he had never been injured. He worked for the defendant two years except for certain layoffs due to slackness in the business. The trainmaster testified it was his duty to examine and pass on the application and that if he knew of the facts of the plaintiff's injury he would not have employed him, or if he had been subsequently informed he would have discharged him. In an opinion written by Judge Gridley the Rock case is cited and on that basis the judgment for plaintiff was reversed.

The next case in Illinois is Powers v. Michigan Cent. R. Co., 268 Ill. App. 493. In that case the plaintiff, a switchman, was caught and crushed between the freight car on which he was riding and another car standing on a parallel track. Suit was brought under the F.E.L.A. The plaintiff had made misrepresentations in his application for employment. He misstated his age by 13 years. He was 52 but in the application he stated he was 39. On the trial he stated that he made this misrepresentation because he was told that the defendant had an employment age limit of 40 years. He also misstated his previous employment and failed to state that he had been formerly employed by another railroad company and that during such employment he had received an injury to his knee cap. He had employed an attorney to represent him in that case and had received a settlement out of court. He worked for the defendant for six years. The court cites the Lupher case in holding that the

71

false statement does not cause the employee to cease being an employee. The court also cites Minneapolis, St. P. & S. S. M. R. Co. v. Borum, 286 U. S. 447. The court discusses the Rock case and states that the Rock case was followed by the Ward case in the Illinois Appellate Court. The court says: "The Rock case involved an unusual state of facts," and then sets out the facts in that case. The court further says:

"The United States Supreme Court characterized him as an 'imposter' who deceived the railroad as to his identity, and that therefore he 'was not of right its employee within the meaning of the Act'; that his continuing employment was 'in the nature of a cheat' and that 'the misrepresentation and injury may not be regarded as unrelated contemporary facts.' We read the opinion in this case as based upon the fact that the railroad had denied plaintiff employment, but he had fraudulently obtained employment by posing and pretending that he was an applicant who had been accepted. In the instant case plaintiff used his own proper name and made out and signed in his own handwriting the application for employment; he was accepted and was never rejected; he did not change his name or apply for employment under an assumed name, and did not have a third person impersonate him before defendant's medical examiner.

"The Ward case (cited above) in this court cannot readily be distinguished from the case under consideration. We think the opinion in that case extended the effect of the Rock case further than we should go. We are supported in this view by the more recent case of Minneapolis, St. P. & S. S. M. R. Co. v. Borum, 286 U. S. 447, 52 Sup. Ct. 612. The writer of the opinion in the Borum case wrote the opinion in the Rock case."

The court cites other cases in various jurisdictions holding that where the employee in his application had made false representations the contract of employment and the relation of master and servant still would exist, and that during the term of such employment the employer would not be free from liability for negligence toward his employees. The court reversed the judgment which had been entered for the defendant.

In Minneapolis, St. P. & S. S. M. R. Co. v. Borum, supra, the action was brought by the plaintiff under the F.E.L.A. and the defendant contended that the State court erred in sustaining the finding that the plaintiff was an employee within the meaning of the Act. The plaintiff made an application in writing to the defendant for employment as a switchman. The defendant had a rule promulgated to promote safety and efficiency in the operation of its railroad, which declared that no person over 45 years should be taken into service. Plaintiff was 49 years old at the time the application was made and falsely stated he was 38 years old. This statement was relied on by the examining surgeon, and "was in part the basis of his finding and report that the plaintiff was in good health and acceptable physical condition." The defendant also had a rule providing that applications for employment not rejected within 30 days would be considered accepted. The court considers the Rock case, quotes from it, and says that in the instant case the defendant could not have regarded the difference between plaintiff's actual age and that stated in his application as having any material bearing upon the physical condition it required. Plaintiff's physical condition was not shown to be such as to make his employment inconsistent with the defendant's proper policy or reasonable rules to insure discharge of its duty to select fit employees, and the court holds that the facts do not bring the case within the decision in the Rock case.

In White v. Thompson, 181 Kan. 485, 312 P.2d 612 (1957), the question raised was on a motion to strike a portion of defendant's answer. The defendant had pleaded that the plaintiff in his application misrepresented and concealed his former place of employment and injuries which he had received while so employed, that the defendant relied upon such representations, and that if it had known of their truth would not have employed him. The court struck that portion of defendant's pleading. The defendant contended that because of the false statements and misrepresentations in plaintiff's application for employment and to the medical examiner he never became an employee of defendant under the F.E.L.A. and accordingly was not entitled to the protection of the Act and could not recover for injuries alleged to have been sustained. The defendant relied on the Rock and Borum cases, Southern Pacific Co. v. Libbey, 199 F. 2d 341, and other cases. The court in its opinion made an extensive review of the authorities cited by the defendant and came to the conclusion that with the possible exception of one case it was inherent in the holdings of the cited authorities that the contract of employment was not void, and to terminate the contractual relation of master and servant upon the ground of misrepresentations, the misrepresentations must be of such a character as to substantially affect the examining physician's conclusion that the employee was in good health and acceptable physical condition at the time of his physical examination and that a causal relation existed between them and the injury sustained by the employee in the performance of his duty. Such misrepresentations standing alone might render the contract voidable and form the basis for its rescission by dismissal of the employee. The court in support of its conclusions cites numerous cases, including Newkirk v. Los Angeles Junction Ry. Co. (1942), 21 Cal.2d 308, 131 P.2d 535, where the

court lays down the rule that where the fraudulent misrepresentations of the employee do not go to the "factum" of the contract the contract is not void. The court further held that where there is no causal connection between the injury and the misrepresentation the plaintiff had a contract of employment with the defendant even though it might have been voidable, the relation of master and servant was created, and during the period of the existence of that relationship the defendant was obligated to exercise the same degree of care for plaintiff's protection as it was required to exercise on behalf of any other employee entitled to the benefits of the F.E.L.A.

In accord with that case is Eresafe v. New York, New Haven & Hartford R. Co., 250 F.2d 619 (1957), in which the court, after discussing the Rock and Borum cases, holds that a humane and realistic policy in such cases requires substantial proof of a direct causal connection between the misrepresentations made at the time of hiring and the subsequent injury to the employee before fraud can be considered a bar.

The Rock case could be distinguished from the other cases on the theory that substitution of another party for the examination and for writing the application for employment was fraud of such a character that the employment contract never came into legal existence. *"'Fraud in the factum'"* arises from a want of identity or from circumstances which affect the question of whether the contract ever had a legal existence. 17 C.J.S. Contracts, sec. 153.

We are aware there are cases holding, without any consideration as to whether or not there is a causal relation between the misrepresentation and the injuries in question, that where an injured person has made material false representations in his application for employment he either is not an employee ab initio or at the time of the injury his contract retroactively terminates. Such a rule is harsh and

could result in great injustice. During the period he works for the carrier it owes him no duty whatsoever under the F.E.L.A. or the other safety regulations enacted into federal law. We prefer to follow the rule laid down in White v. Thompson, supra, and supported by Powers v. Michigan Cent. R. Co., supra, decided by our court, which is that, while a contract because of misrepresentations may be voidable, in order to use the misrepresentation as a defense in a F.E.L.A. action the defendant must plead and prove that there is a causal relation between the misrepresentation in the application made by the plaintiff and the injury sued on.

Under this view of the case the trial court would have been justified in refusing to permit the filing of the affirmative defense in defendant's first amendment. The trial court would have been justified in the instant case in striking the same. The defendant sought to amend the defense at the close of all the evidence by pleading a causal relation between the alleged misrepresentation and the injury. In order to justify such pleading at that time there must have been evidence in the record from which the jury could have found that such a causal relation existed.

The plaintiff's contention, substantiated by the evidence, is that immediately before the accident he was riding on the right side of a freight car in the course of his duties, that it became necessary for him to get off the car at or near a switch and as he alighted his foot struck a piece of coke or some round object, throwing him to his knees and twisting his body, causing the injury in question. There is testimony that there was coke all over the ground in the area and that some of the pieces were as big as a man's head. The coke came from coke cars which were overloaded or roughly handled, and the yard was only cleaned up every two or three months. Immediately after the accident the trainmaster and oth-

er workmen pulled plaintiff up and carried him into the yardmaster's office, and he then told them what had occurred. One witness (Chamblee) on behalf of defendant testified that immediately before the accident "he saw Taylor straddling the side of a gondola car, then he saw Taylor 'leave the gondola' and from the movement of his lantern 'would say that he jumped.' " (Statement in defendant's brief.) The defendant in its brief further says that Chamblee's "testimony permitted either of two inferences: one, that Taylor was injured by jumping from the gondola, or two, that he (and his lantern) fell from the car in an epileptic seizure." In our opinion there is nothing in the evidence from which the jury could infer that the plaintiff fell from the car because of an epileptic seizure. The evidence directly contradicts such an inference. If Chamblee's testimony was believed by the jury, it would only show that the plaintiff jumped from the car, and in fact Chamblee specifically and categorically so states. There is nothing in the record that there was, at the time when the plaintiff's fellow employees helped him into the yardmaster's office, any indication that he had suffered from such a seizure. Nor did Chamblee, who saw him immediately after the accident, so testify. In the absence of any evidence connecting the misrepresentation with the injury the trial court was in error in permitting the defendant's amendment to its amendment to the defense to be filed. The court should have stricken the entire affirmative defense.

■ The plaintiff has raised some question with reference to instructions. With reference to defendant's instruction No. 15 the defendant urges that any question concerning such instruction should not be considered by the court since neither the report of proceedings nor the abstract of record shows what objection was made to the instruction in the court below. In the post-trial motion there is no specific ob-

77

jection, nor is there any record preserved of the objections made in the conference. Under the authority of Rubinstein v. Fred A. Coleman Co., 22 Ill.App.2d 116, 159 N.E.2d 379; Saunders v. Schultz, 20 Ill.2d 301, 170 N.E.2d 163; Saunders v. Schultz, 22 Ill.App.2d 402, 161 N.E.2d 129; and Onderisin v. Elgin, J. & E. Ry. Co., 20 Ill. App.2d 73, 155 N.E.2d 338, the objection of the defendant is well taken and this court will not consider the instruction.

■ The plaintiff also objects to defendant's instruction 1–a, particularly to paragraph 7. The instruction is an instruction in one sentence. It commences with the phrase, "If you believe from the preponderance of the evidence," which is followed by seven marked paragraphs. It takes up better than one page of the abstract in single space. Our courts have held that where in the first part of an instruction a statement is made that the jury must base its findings upon the evidence such statement carries through and applies to all the subsequent clauses of the instruction and it need not be repeated. Village of Altamont v. Carter, 196 Ill. 286, 63 N.E. 613; Bellomy v. Bruce, 303 Ill. App. 349, 25 N.E.2d 428. When that rule was promulgated by the courts we do not think they had before them an instruction of the character of the one before us. The instruction is long, involved and confusing.

■ The portion of the instruction to which the plaintiff objects is paragraph 7. The instruction, as we have noted, commences, "If you believe from the preponderance of the evidence," and the 7th paragraph provides:

"(7) that had plaintiff disclosed the truth regarding prior injury to his back and regarding his chronic epilepsy his application for employment would have been rejected or he would have been dismissed from defendant's service; that

78

said prior back injury and said chronic alleged epilepsy had a causal relation to the accident, January 26, 1957, and the injuries claimed to have resulted therefrom, then the plaintiff was not rightfully and lawfully in the employment of the defendant at the time of his alleged accident on January 26, 1957, and he is not entitled to recover under the statute under which this action is brought, and you should find the defendant not guilty. . . ."

Unless that paragraph of the instruction is carefully read it gives the impression that the trial court is instructing the jury that the back injury and epilepsy had a causal connection to the accident. The purpose of instructions is to enlighten the jury as to the law of the case. The absurdity of attempting to enlighten a jury of laymen by such an involved and confused instruction is too obvious to require comment. The "Illinois Pattern Jury Instructions," prepared by the Illinois Supreme Court Committee on Jury Instructions, will be available at the time this case is retried. Upon retrial the patterns of instructions therein set forth should be followed in accordance with Supreme Court Rule 25–1.

Under our finding in the case it is not necessary to further discuss this instruction or to discuss other points raised before us. The judgment of the Circuit Court of Cook County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ, P. J. and DEMPSEY, J., concur.

SUPPLEMENTAL OPINION

The defendant filed a petition for rehearing in this case and called the court's attention to the case of Still

79

v. Norfolk & Western R. Co., which was pending in the Supreme Court of the United States. An examination of the briefs filed in that case indicated that the contentions made therein were of such a character that the court would probably re-examine its decisions in Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock, 279 US 410, 73 L Ed 766, and Minneapolis, St. P. & S. S. M. R. Co. v. Borum, 286 US 447, 76 L Ed 1218. We held our ruling on the petition for rehearing in abeyance.

In Still v. Norfolk & Western R. Co. (No 48, October Term, 1961, opinion filed November 13, 1961), the United States Supreme Court did re-examine both the Rock and the Borum cases, and in its discussion pointed out that the court in the Borum case had noted a number of factual differences with the Rock case, none of which was sufficient to justify a distinction between Rock and Borum based upon an acceptable reconciling principle. The court holds that in these cases there was no broad general principle laid down to the effect that material misrepresentations made by an employee to the railroad at the time of his employment would bar recovery under the Act, nor was there established affirmatively "an intelligible guide by which lower courts could decide what misrepresentations were so 'abhorrent to public policy' as to compel a forfeiture of the worker's right to recover under the Federal Employers' Liability Act." The court further points out that both the federal and state courts in a majority of cases accepted the Rock case as laying down a narrow public policy but construed the Borum case as giving the courts the right to make broad exceptions in appropriate cases, that most such cases were deemed appropriate ones for avoiding the harsh consequences of the Rock case, and that these courts created new exceptions to allow recovery whenever a case did not fit within an exception already established. The court referred to a number of state and federal cases, among

others Powers v. Michigan Cent. R. Co., 268 Ill App 493 (cited and quoted from in our original opinion), together with Carter v. Peoria & P. U. Ry. Co., 275 Ill App 298. The court further says: "In this situation, it seems necessary for this Court, in the interest of the orderly administration of justice, to take a fresh look at this question in an effort to supply an intelligible guide for future decisions. Having done so, we conclude that the Rock case, properly interpreted, lays down no general rule at all." The court then discusses the legislative policy embodied in the Federal Employers' Liability Act, and says:

"To facilitate this congressional policy, the terms 'employed' and 'employee' as used in the Act must, in all cases not involving the precise kind of fraud involved in Rock, be interpreted according to their ordinary meaning, and the status of employees who become such through other kinds of fraud, although possibly subject to termination through rescission of the contract of employment, must be recognized for purposes of suits under the Act. And this conclusion is not affected by the fact that an employee's misrepresentation may have, as is urged here, contributed to the injury or even to the accident upon which his action is based. This argument, which seems to have gained its popularity primarily as an exception by which the application of Rock could be avoided, suggests that a railroad worker may be partially 'employed' under the Act—that he may be able to recover for some injuries negligently inflicted upon him by the railroad and not be able to recover for others so inflicted, depending upon the circumstances of each particular injury. Even if this suggestion recommended itself to reason—which, other than as an exception to the broad principle mistakenly drawn from Rock, it plainly does not—

81

we would not be free to accept it. For it finds no support at all in the history, purpose or language of the Act which provides recovery for any 'injury or death resulting in whole or in part from the negligence of' the railroad and there is no prior authority of this Court which requires or even permits us to disregard or impair this controlling declaration of public policy."

■ Our original opinion in the instant case is in accordance with, though not so broad as, the decision of the Supreme Court of the United States in the Still case. Under the rule laid down in the latter case, the trial court in an action brought under the Federal Employers' Liability Act should not have permitted the defendant to plead a misrepresentation made by the employee to the railroad company at the time of hiring, whether or not that misrepresentation had a causal relation with the injury involved.

The petition for rehearing is denied.

DEMPSEY and SCHWARTZ, JJ., concur.