Juan Guardado, et al., Plaintiffs-Appellees, v. Carlos Navarro, d/b/a El Sarape and Alex G. Javaras, Inc., an Illinois Corporation, Defendants-Appellants.

Gen. No. 48,883.

First District, First Division.

February 13, 1964.

Hinshaw, Culbertson, Moelmann & Hoban, all of Chicago (John M. Moelmann, Oswell G. Treadway and Karl M. Tippet, of counsel), for appellants.

Blowitz & Ozmon, of Chicago (Nat P. Ozmon and Charles R. Winkler, of counsel), for appellees.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

This action arises under the Dram Shop Act, Ill Rev Stats 1949, c 43, § 135, for injuries sustained by plaintiffs while passengers in a car which crashed into a bridge abutment. They allege that the causal factor was the intoxication of their driver from alcoholic beverages purchased at El Sarape, a tavern operated by defendant Carlos Navarro and owned by defendant Alex G. Javaras, Inc. Judgments for plaintiffs were entered on jury verdicts awarding $2,000 to Juan Guardado, $8,500 to Connie Guardado, and $15,000 to Mary Martinez.

Defendants contend on this appeal that plaintiffs were guilty of complicity as willing participants

in a drinking party which led to the intoxication of the driver, and thus do not qualify in the category of innocent parties entitled to recover under the Dram Shop Act. The defendants pray for reversal with judgments here in their favor, or, in the alternative, reversal and remandment for a new trial.

The driver of the car, Lupe Marquez, had returned to Chicago from Mexico the evening before the occurrence on July 10, 1955, and had spent the night with his brother Juan Guardado, one of the plaintiffs. The following morning they took a ride in Juan's car, visited a carnival for a few hours, and proceeded to a tavern called the Monterey Club at about 3:00 p. m., where they sat at the bar together for almost two hours. During this time, according to Juan, he had one Coca-Cola and Lupe had a beer. Lupe testified that he had a Coca-Cola, in addition to a beer.

The other two plaintiffs were Connie Guardado, the divorced wife of Juan, and her niece, Mary Martinez. They arrived at the tavern between 3:00 and 4:40 p. m. They went back to living quarters in the rear of the building which were apparently occupied by another woman, where they stayed until the bartender called Connie to change a ten-dollar bill for him.

When Connie came out to perform this errand, Juan offered to take her to get the change. Connie then invited Mary to go with them. Lupe also got into the car, the two women in the back seat, and the men in front, with Juan driving.

They arrived at El Sarape at about 5:00 p. m., entering together. None of the plaintiffs had been there before. Lupe saw someone he knew at the bar and stayed there to talk. The other three had drinks at a table to the rear of the bar. The room was small, containing three booths and three tables plus a twelve-stool bar. Only fifteen persons in all were present that Sunday afternoon.

According to Juan, he had three drinks and each girl had two drinks of "seven and seven" (Seven Crown, a whiskey, and Seven-Up, a soft drink). They could see Lupe drinking at the bar and Juan testified that Lupe had about 15 or 20 drinks of "whisky, tequila." * Lupe himself claimed that he drank 10 tequilas and 10 beers, that he had a desire to drink more, but "after the ten tequilas and the beer I was not feeling well." All testified that the plaintiffs did not purchase drinks for Lupe nor did Lupe buy for them, although it was argued by defendants that it might be considered that Juan purchased drinks for Lupe since he had sent Lupe $100 to finance his return from Mexico.

Connie testified that during the approximate two-hour period they were in El Sarape, she did not talk to Lupe at any time. According to Juan, Lupe came over to the table and invited Mary to dance with him, but he did not remember whether she did so. Juan and Connie testified they danced together several times, although there was no space specially set aside for dancing.

Connie said it was her idea to leave. According to Juan, he and the women left El Sarape at about 7 o'clock. It was his intention to take the girls back to the Monterey Club and then return to pick up his brother Lupe. The girls got into the back seat. Juan got into the front seat and tried to start the car. Lupe came out of El Sarape "real mad," pulled the door open and started swearing at Juan in Spanish. Mary testified that Lupe left the tavern stumbling, hollering and staggering. Three other witnesses, customers of the tavern at the time, testified that Lupe was intoxicated.

---

* But he also stated that it could have been 50, the way Lupe was drinking, swallowing them down, one right after another.

According to the plaintiffs, Lupe, who was ten years older than his brother, struck Juan, pushed him over to the other end of the seat, got at the wheel, turned the key and took off. Lupe was 5′ 4″ and weighed 128 pounds, while Juan was "at least a head taller." Lupe was driving "real fast," sometimes 60 m.p.h. on Halsted Street and went right past the Monterey Club. Juan said at trial, "I told him to stop, let me drive the car." Mary testified that she pleaded with him to stop. Lupe did not do so, however, until he hit a bridge abutment.

Where the plaintiffs participate in the drinking which brings about the intoxication of the person alleged to have caused injury to them, there can be no recovery under the Dram Shop Act. James v. Wicker, 309 Ill App 397, 33 NE2d 169. In those cases which have held that plaintiffs were barred by complicity * as a matter of law, the courts have emphasized the degree of cooperation in the drinking. The decision in Tezak v. Cooper, 24 Ill App2d 356, 363, 164 NE2d 493, set out the requirement, there fulfilled, that the participation must be of "a material and substantial degree" to amount to complicity as a matter of law. A summary judgment for the defendants was affirmed.

In Meier v. Pocius, 17 Ill App2d 332, 334, 150 NE 2d 215, the plaintiff admitted in his deposition that he had accompanied his brother to taverns where he had drunk beer and his brother had had highballs, before an automobile crash in a car driven by the brother. The court said:

> Participation does not, in our opinion, necessarily mean that the plaintiff must supply the liquor.

---

* As will be seen from the language of the cases, "complicity" does not require, as argued by plaintiffs, that for their claim to be barred plaintiffs must have "produced" or "procured" the intoxication of the driver.

If, as in the instant case, he embarks with another on a tour of taverns and joins in the drinking of liquor, he cannot under the Dramshop Act recover because of the alleged intoxication of his companion.

In Phenicie v. Service Liquor Store, Inc., 23 Ill App 2d 492, 496, 163 NE2d 220, the plaintiff was at home in his house trailer when he split a quart of beer with a friend, which the friend had brought. Near midnight, plaintiff rode in a car which was driven by the friend into a concrete abutment. The court concluded as follows:

In the case at bar, as in the Meier v. Pocius case, supra, the ultimate question to be decided was whether there was a triable issue of fact on the question of complicity, that is participation by plaintiff in Davis' drinking and subsequent intoxication. In his deposition plaintiff admitted that he participated in drinking with Davis at least to the extent of one quart of beer, thereby in part at least, bringing about the intoxication of Davis. . . . [T]here is no fact question as to participation by plaintiff in the consumption of liquor by Davis. Assuming that Davis was in fact intoxicated, a fact which plaintiff was required to establish, then participation by plaintiff in Davis' drinking exonerates the defendant from liability under the Dramshop Act.

In other cases, the evidence raised a triable issue of fact as to complicity, which required submission of the case to the jury. They were discussed, and distinguished, by the court in Tezak v. Cooper, supra, 361, as follows:

Plaintiff relies on Lester v. Bugni, 316 Ill App 19; Delong v. Whitehead, 11 Ill App2d 330; Tay-

97

lor v. Hughes, 17 Ill App2d 138; and Busser v. Noble, 22 Ill App2d 433. In the Lester case, plaintiff drank only a small amount of beer, made repeated requests to be taken home, finally left his driver, and went to sleep in the back of the car. In the Delong case, plaintiff saw her driver drink one mixed drink and there was a dispute in the evidence as to whether plaintiff herself had one highball. In the Taylor case, the opinion does not indicate whether plaintiff had anything to drink and, if so, whether he drank with his assailant. In the Busser case it is true that plaintiff had "some" beer, but the record was silent as to how much, and consequently it was not clear whether plaintiff had participated in the drinking to a material and substantial degree.

Plaintiff, in the case at bar, relies on Busser v. Noble, 22 Ill App2d 433, 439, 161 NE2d 150, which reversed a summary judgment for defendants, and remanded for a new trial, on the following evidence:

The evidence shows that plaintiff, 17 years of age, went to a tavern on the evening in question with a girl friend and had some beer, the exact amount not being shown. . . . Later in the evening, Donald Pieper, aged 19, who had been to a football game with some friends, met plaintiff at the Palms. He had some beer there. Thereafter the young people got into Pieper's car and went to the tavern operated by the defendant Considine. Pieper had a whiskey bottle in his car.

. . . There is some evidence that Pieper had 3 or 4 beers at Considine's and 3 mixed drinks. He became loud and boisterous and engaged in a violent argument about religion. He then went to his car and plaintiff followed him and they drove off after some altercation.

98

In comparing the facts of the instant case with those of the above cases, we believe that the plaintiffs produced evidence which, when viewed in the light most favorable to their cause required the issues to be submitted to the jury. We, thus, do not agree with defendants' point that this court should reverse and enter judgment here in their favor. Under defendants' alternative argument the question remains, however, as to whether the verdicts of the jury were contrary to the manifest weight of the evidence.

Plaintiffs voluntarily accompanied their companion to the tavern, knew that he embarked upon a celebration and became intoxicated, could count the number of drinks that he consumed, imbibed a number of drinks of liquor themselves, and allowed him to drive them away from the tavern at a high speed, even though they later made verbal protests. The male plaintiff, of a larger build than the driver, could have prevented this danger easily by turning off the key situated on the right side of the wheel. Plaintiffs point out that they were physically separate from Lupe while in the tavern; they sat at a table while he drank at the bar. But plaintiffs have testified that they could observe the driver, that he asked one of the plaintiffs to dance, and that they knew he was intoxicated.

The degree of plaintiffs' participation in the drinking at the tavern forces us to the conclusion that the verdicts are against the manifest weight of the evidence insofar as it relates to the matter of complicity. Even if we were not to determine the case on that ground, we would, nevertheless, be required to reverse and remand for a new trial because the jury was not properly instructed on the issue of complicity. In fact, this failure may well have been the cause of the jury's apparent disregard of the preponderance of evidence on this subject.

99

Defendants tendered and the court refused the following instruction:

> If you find that plaintiffs voluntarily participated to a material and substantial extent in the drinking which led, in whole or in part, to the intoxication of Lupe Marquez, then plaintiffs cannot recover any damages from defendants. The law does not say what is participation to a material and substantial extent. That is for you to decide.

This instruction is taken from the IPI, § 150.17. The question of complicity was a vital one, clearly raised by the evidence. It was the duty of the trial court to instruct the jury on the legal effects of plaintiffs' participation in the drinking. The issue was not covered by any other instruction,* and the failure to give the tendered instruction was prejudicial error requiring a new trial.

██ A final ground for reversal is the manner in which counsel for the plaintiffs repeatedly injected the matter of insurance coverage into the case. This was done more than once on redirect examination of plaintiffs' witness, Lupe Marquez, after he had testified on cross-examination that he had been interviewed by a "man representing the defendants"; on cross-examination of the court reporter who had been called by defendants in the matter of the impeach-

---

* The court gave the proper but insufficient instruction, again from IPI, which stated that the plaintiffs had the burden of proof on the following propositions: that Lupe Marquez was intoxicated at the time of the collision; that the defendant sold or gave intoxicating liquors consumed by Lupe Marquez; that the liquor thus consumed caused, in whole or in part, his intoxication; that the intoxication was at least one cause of the occurrence; and that as a result of the occurrence the plaintiffs were injured.

ment of Lupe's testimony; and again in the closing argument to the jury by counsel for plaintiffs.

Despite today's widespread coverage of motorists by liability insurance, the general rule remains as it was stated in Wiersema v. Lockwood & Strickland Co., 147 Ill App 33 (1909) to the effect that evidence of insurance protection is not to be admitted in a personal injury action. Unless this rule were to be changed by statute, its reason for existence would be as valid in 1964 as it was in 1909, and has been so frequently stated in the cases through the years that it will not be reiterated here.

■ Plaintiffs contend, however, that an exception to the rule should be recognized in the situation involved in the case at bar. Without going so far as to concede a license to bring out the existence of insurance, as such, we do recognize the principle that when a written statement or transcript has been utilized in the impeachment of a witness for plaintiff, it is open to plaintiff's counsel to show that the person taking the statement had an interest in the defense of the litigation. And this, in order to discredit the statement or rehabilitate the witness. It is ordinarily possible to do this, however, without eliciting the fact that the investigator was employed by an insurance company. The right to establish an adverse interest must not be used as a screen for the introduction of a prejudicial fact entirely outside the issues of the case.

The cases we have considered in this regard include: Clark v. Hasselquist, 304 Ill App 41, 47, 25 NE2d 900; Williams v. Matlin, 328 Ill App 645, 648, 66 NE2d 719; Tir v. Shearn, 2 Ill App2d 257, 264, 119 NE2d 406; Pinkerton v. Oak Park Nat. Bank, 16 Ill App2d 91, 104, 147 NE2d 390; Rubinstein v. Fred A. Coleman Co., 22 Ill App2d 116, 125, 159 NE2d 379.

101

The central theme of these decisions seems to be a determination to avoid prejudice to either litigant. If a proper redirect examination under the circumstances we are considering cannot be made without reference to insurance, then so be it. But such an eventuality should be looked upon as the rare exception rather than considered as a regularly recognized departure from the general rule. Some of the opinion language most favorable to plaintiffs' position is dictum, but, even where not, we find it noted that once insurance was mentioned the "matter was not further dwelt upon," or words to that effect. In the case before us we believe that the matter was dwelt upon unduly, for the apparent purpose of gaining a prejudicial advantage rather than simply to bring the position of the witnesses into proper perspective and relationship.

For the reasons we have indicated, the judgments for plaintiffs are reversed, and the cause is remanded for further proceedings not inconsistent with the views here expressed.

Reversed and remanded for a new trial with directions.

MURPHY, J., concurs.

BURMAN, J., specially concurring.

I am in accord with the majority opinion that under the facts and circumstances in this case the question of complicity was a vital one and the failure to give a tendered instruction on this issue was prejudicial error requiring a new trial. I also agree that the injection of the matter of insurance coverage was prejudicial error.

I do not agree with the conclusion of the majority that the verdicts and judgments entered thereunder were against the manifest weight of the evidence. As a matter of fact the defendants' brief under the

102

heading of Points and Authorities makes no reference to manifest weight as is required by Appellate Court Rule 7. Had the trial errors complained of not been committed below I would have no hesitancy in finding that the evidence, even as it is set out in the majority, is sufficient to support the verdicts. I feel that such a conclusion would uphold the spirit of the Dram Shop Legislation and the most recent authorities which have interpreted that act. Busser v. Noble, 22 Ill App2d 433, 161 NE2d 150.