Martin J. Hedrich, Plaintiff-Appellee, v. The Borden Company, a Corporation, and Angelo A. Accurso, Defendants-Appellants.

Gen. No. 51,977.

First District, First Division.

October 14, 1968.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, and John W. Dondanville, of counsel), for appellants.

Thompson & Thompson, of Chicago, for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Plaintiff brought this action to recover damages for personal injuries sustained on December 1, 1964, when a truck owned by the defendant Borden Company and operated by defendant Angelo A. Accurso, struck him while he was standing in the front entranceway of a Woolworth's store on the Southeast corner of Milwaukee and Ainslie Avenues in the City of Chicago. After a trial before a jury, plaintiff recovered a $175,000 verdict against both defendants. Judgment was entered on the verdict and the post-trial motion of the defendants was

denied. This appeal is prosecuted from the entry of the judgment and the overruling of the post-trial motion. No questions are raised on the pleadings.

Three principal points are raised on this appeal. First, Borden argues that its relationship with Accurso was that of principal-independent contractor and not that of master-servant, and consequently the verdict against Borden should be reversed. Secondly, both defendants argue that the jury's verdict was so unreasonable and palpably excessive under the record as to require a new trial. Finally, both defendants argue certain trial errors with respect to improper questioning of plaintiff regarding his family status, the introduction into evidence of colored photographs of the plaintiff's injury, and alleged misconduct by plaintiff's counsel which was calculated to appeal to the passion and prejudice of the jury.

The facts relating to the accident are relatively simple. An independent witness testified she was waiting for a green light at the Northeast corner of Ainslie and Milwaukee Avenues when she observed a black car and a Borden truck, both traveling very fast, proceeding northbound on Milwaukee Avenue. It is undisputed that Accurso was driving the Borden truck. As the traffic light at the corner changed from green to red for northbound Milwaukee Avenue traffic, the two vehicles attempted to stop. The Borden truck, in attempting to avoid hitting the rear of the black car, turned towards the curb and traveled onto the sidewalk. The black car sped away, and its operator and owner remain unknown. Plaintiff, who was waiting in front of the Woolworth store on the Southeast corner of Milwaukee and Ainslie, heard the screech of the truck's brakes and attempted to jump out of the way as the truck came up onto the sidewalk. His attempt to avoid being hit by the truck was unsuccessful, and his left foot was struck by the front portion of the truck, knocking his shoe off. Defendant Accurso, called as a witness by plaintiff under section 60 of the Civil

Practice Act, Ill Rev Stats (1965), c 110, § 60, testified that he was traveling North on Milwaukee Avenue when a black car began to pass him on the left. The car then began to cut the truck off by pulling back in front of the truck, and then, in an attempt to stop for the red light, abruptly applied his brakes. In an effort to avoid hitting the black car, Accurso swung the truck to the right but was unable to avoid going up on the sidewalk. The truck went over the curb and into the entrance of the Woolworth store.

Plaintiff sustained a comminuted compound fracture of the os calcis of his left foot. The dislocation tended to crush all of the soft tissue and there was an evulsion of the skin. In addition to the surgical procedures to reset the bones, certain dead skin was denuded, and later skin grafts in the area were attempted. Plaintiff developed a bone infection known as osteomyelitis and ran a fever for a period of approximately five weeks. There has been a certain amount of deformity to the foot and loss of size in the left leg. Plaintiff still suffers pain, and when standing on his foot for a period of time it begins to swell. Medical testimony indicated that this swelling condition and the intermittent pain was a permanent condition. Plaintiff walks with a slight limp and possible future surgery has not been recommended, due to the fact that the heel had a good solid boney union and the skin grafts had taken as well as could be reasonably expected.

█ No question is raised on this appeal with respect to the propriety of the jury's finding that defendant Accurso acted in a negligent manner in driving the Borden truck up onto the sidewalk and striking the plaintiff. The testimony of the independent witness and the defendant Accurso in describing the way the accident occurred was resolved by the jury in favor of the plaintiff, and the record amply supports the jury's verdict.

The facts relating to Accurso's employment status with Borden were testified to by Accurso and Clarence T. Soren-

son, the sales manager from Borden's pursuant to section 60 of the Civil Practice Act, Ill Rev Stats (1965), c 110, § 60. The testimony of Accurso was substantially as follows: that at the time of the accident, the truck Accurso was driving was loaded with milk which he was delivering to various customers. The truck belonged to Borden, was stored on Borden's private premises when not in use, and painted on the side of the truck was the legend "Permit No. 3." This number was the permit issued by the City of Chicago to Borden Company on their request and application for such permit. Accurso also had a milk permit number of his own which was painted on his own truck. The rules of the Chicago Health Department require all milk vending trucks to display the permit number of the vendor on the side of the truck. (Municipal Code of Chicago, c 154, § 8.) Accurso was aware of this ordinance, but did not indicate his permit number on the side of the Borden truck. The reason Accurso was not driving his own truck was that it was out of service, and according to his own testimony, "not worth fixing up." He had been driving the Borden truck for approximately one and one-half months, apparently at no cost to him, since Borden Company handled all servicing and maintenance that would be required on the truck. Accurso abided by all Borden Company rules concerning the operation of Borden trucks. Prior to vending milk for Borden Company, Accurso had dispensed milk for another company. However, his relationship with Borden has been the same since he first started with them in March, 1963, up to the present time and Borden was the only company for whom he was delivering milk. From time to time Borden would give him new customers to serve, to whom he promptly attended. Accurso frequently made collections for Borden, and all checks and monies received from customers payable to Borden Company were promptly turned over to it. Sorenson, Borden's sales manager, testified that there was a company rule requiring any person driving a company

vehicle who was involved in an accident with that vehicle to report such accident to the company. In accordance with this rule, Accurso notified Borden immediately of the accident he had with plaintiff. Accurso was a member of the Milk Drivers' Union, Local 753, and paid his regular union dues to such union. The president of the Milk Drivers' Union, Local 753, testified that a contract between the Union and Borden Company was entered into on behalf of all of the members of the Union, including those persons who were designated as "vendors." Accurso admitted that the Union negotiated working conditions for him with the Borden Company. The sales manager, Sorenson, testified that he was not totally familiar with the contract between the Union and Borden's, but stated that certain portions of the contract did apply to vendors. Over defendant's objection, the contract was introduced into evidence. Borden paid Accurso $102 monthly pursuant to the Union contract as compensation for advertising Borden products. Borden also made contributions to the Union Welfare Fund on behalf of Accurso. The remaining portion of Accurso's obligations to the Union Welfare Fund came out of his union dues.

Appellant Borden Company contends that Accurso was not its agent or employee, but rather a self-employed milk vendor who had business dealings with the Borden Company. Borden also contended that the allegation of agency made by the plaintiff in his pleadings, and the evidence adduced at the trial, does not reveal any competent evidence to sustain such allegations, as the evidence as to ownership of the truck, permit number, filing of the accident report, repair and storage of the vehicle, collection of monies and checks by Accurso for Borden Company merely created a procedural presumption of agency, which in fact was rebutted by the testimony of Accurso and Mr. Sorenson, sales manager of the Borden Company. Borden insists that nowhere in the record is

there any evidence indicating that the Borden Company had a right to control or direct the activities of Accurso. ██ Once the ownership of the truck in question had been established, a presumption arose that the vehicle was being operated by the owner's agent, and a prima facie case for recovery had been made. However, plaintiff did not rely solely upon a procedural presumption of agency between Accurso and the Borden Company. Plaintiff went beyond the mere establishing of the ownership of the truck; he established that Accurso was a collection agent for Borden; that he used Borden's equipment, at no expense to him, for deliveries of milk to customers; that he abided by the rules of the Borden Company concerning accident reports, repairs and storage of the Borden vehicle; that Accurso maintained exclusive dealings with the Borden Company; that his delivery activities were conducted over a regular route; and that Borden exercised some control over him in the transaction of several of the typical duties a Borden Company employee would ordinarily perform. The presumption of agency was not rebutted or destroyed by the contravening evidence of Accurso and Sorenson, and the weight to be given the presumption, whether it had been overcome, and whether the agency had been proved were, ordinarily, questions for the trier of fact. It is obvious from the evidence introduced at the trial that plaintiff did not rely solely upon the procedural presumption of agency created by the fact that Accurso was driving Borden's truck in connection with the delivery of milk. It is evident from the record that there was an intent on the part of Accurso to serve the interests of the Borden Company as well as his own interests in the business arrangement the two parties had established. In the case of Bristol & Gale Co. v. Industrial Commission, 292 Ill 16, 126 NE 599 (1920), the court stated:

> It is impossible to lay down a rule by which the status of a person performing a service for another

245

can be definitely fixed as an employee or as an independent contractor. Ordinarily no single feature of the relation is determinative but all must be considered together.

■ Courts are in agreement that the presence in any given case of one or more of the recognized indicia of the status of independent contractor is not necessarily conclusive and that there is no absolute rule for determining whether one is an independent contractor or a servant, but that each case must be determined on its own facts. In Gomillion v. Forsythe, 218 SC 211, 62 SE2d 297 (1950), the court stated that ownership of the motor truck and maintenance of such truck by the milk distributing company for the use of Mr. Bell, the truck driver, was a circumstance to be considered by the jury, along with all other evidence in the case, in determining whether Mr. Bell was an independent contractor or a servant of the milk distributing company. (See annotation in 53 ALR2d 183 (1957), for a discussion of cases concerning route drivers as independent contractor or employee for purposes of the respondeat superior doctrine.)

■ Defendants maintain that Trzaska v. Bigane, 325 Ill App 528, 60 NE2d 264 (1945), is authority for the proposition that the activities of Accurso were that of an independent contractor. The Trzaska case is readily distinguishable from the instant case in that in Trzaska, the purported agent, Buchunas, owned his own truck which was used to make all deliveries, obtained the license for it, paid for its upkeep, fuel and maintenance, made deliveries for his purported employer only when requested by them to do so, collected money only when requested by them to do so, was free to take a load or not as he pleased, and was also in business for himself delivering coal, and had made deliveries for other dealers during a two-year period while also making deliveries for his pur-

ported employer. The court in Trzaska held that Buchunas was an independent contractor, and not an employee. Considering all the elements and activities of Accurso with the Borden Company, we are of the opinion that the issue of agency was legitimately submitted to the jury and was properly resolved. "Unless the relationship is so clear as to be undisputed, the relationship between principal and agent is a question of fact for the jury to determine from all the evidence." Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717 (1957). The denial of defendant's, the Borden Company, motion for a directed verdict and judgment notwithstanding the verdict by the trial court was not error.

Considered next is the issue of whether error was committed at the trial due to the following:

■■ Introduction by the plaintiff's counsel into evidence testimony of plaintiff relating to his family status; introduction into evidence of certain colored photographs of the plaintiff's injury and the exhibition of the plaintiff's injured foot to the jury; and the alleged misconduct of plaintiff's counsel during the trial. Defendants contend that the aforementioned were designed and calculated to elicit the sympathy, passion and prejudices of the jury for the purposes of enhancing damages, and that any one alone was sufficient grounds for granting a new trial. During the course of direct examination of the plaintiff, Martin Hedrich, his attorney asked the following questions:

"Q. By the way, before this accident, in addition to your business activities, did you engage in any recreational activities?

"A. Yes, on occasion.

"Q. What would you do; what was the nature of that?

"A. Well, take my children and my friends out to the park."

247

Defendant objected to this testimony of plaintiff, and moved for a mistrial; the court denied the motion for a mistrial. Plaintiff further testified regarding his recreational activities with his children, ice skating and sledding, and with his wife, square dancing. While defendants concede that it was proper and relevant to show the nature of the recreational activities of the plaintiff, they contend that the mention of the fact that he had a family was prejudicial to them. We are of the opinion that this incidental disclosure that plaintiff had "children" was not prejudicial to defendant's cause to warrant a new trial. Nowhere in the record do we find any testimony or suggestion that plaintiff's children were in any way dependent upon the plaintiff for support, care or maintenance, nor how many children Martin Hedrich had, or what their ages were. In Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28 (1966), the plaintiff's counsel made mention in his closing argument to the jury that the plaintiff had a wife and family, and defendant cited this as error on appeal. The court disposed of the matter stating:

> "The record discloses that there was no undue emphasis on the fact that plaintiff had a wife and family to support. There was no disclosure of the number of plaintiff's children nor of his family's poverty, necessitous circumstances or financial difficulties."

If family status is material to the issues of the case or provides some insight as to some element of the damage claimed, such evidence is not error. Postal Tel. Cable Co. v. Likes, 225 Ill 249, 80 NE 136 (1907); Chicago Union Traction Co. v. May, 221 Ill 530, 77 NE 933 (1906). In the instant case, the object of the testimony was not solely to enhance damages or calculated to arouse the sympathy of the jury.

Defendants are aware that it is within the sound discretion of the trial court as to whether colored

248

photographs of an injury will be admitted into evidence, and whether an injured party will be allowed to exhibit his injury to the jury. Generally, photographs are admissible in evidence only when they may be helpful to an understanding of the facts, are material, accurate, relevant and correctly portray what they purport to show. Baggett v. Ashland Oil & Refining Co., 92 Ill App2d 433, 236 NE2d 243 (1968); Darling v. Charleston Memorial Hospital, 50 Ill App2d 253, 200 NE2d 149 (1964). While colored photography is relatively new and cases involving the admissibility of colored pictures are not numerous, there are several recent cases which have held that the admission of colored photographs, under certain circumstances, is not error. In Murphy v. Lindahl, 24 Ill App2d 461, 165 NE2d 340 (1960), the court makes the following comment with reference to colored photographs:

> "This description undoubtedly aroused a normal emotional reaction on the part of the jury. We think, therefore, that the information improperly given as to plaintiff's family, the reference to insurance in the testimony, or even the admission of gruesome colored photographs, which we believe did not tend to prove any material issue, did not aggravate the emotional reactions of the jury, sufficient to warrant a reversal for prejudice."

Exhibition of the injured foot in conjunction with the photographs gave the jury an opportunity to observe the injury, and such a procedure was solely at the trial court's discretion. The identical procedure was employed in Garner v. Burns Mid-Town, Inc., 346 Ill App 162, 104 NE2d 506 (1952), where the court stated:

> "The defendant also assigns as error the admission of colored pictures of the boy's leg, taken about two months after the injury. If there was any error in the admission of these pictures, the fact that the boy

249

exhibited his injury to the jury at the time of the trial, so that the jury had the opportunity to see for itself the exact nature and extent of the injury, would cure this."

 For a further discussion of the admissibility of colored photographs into evidence, see the annotation in 53 ALR2d 1102 (1957). We do not feel that such colored photographs of the plaintiff's injury, taken some time after the occurrence of the injury and purporting to portray the appearance of his foot at the present time, would have such prejudicial effect so as to outweigh their probative value to the jury, and hence there was no error in their admission into evidence. There was no claim by the defendants that there was any distortion or inaccuracy in photographs other than the fact that they were in color, rather than black and white, and calculated to excite sympathy in the minds of the jury. The photographs were representations of the condition of the plaintiff's injured foot at the time they were taken, and did not exaggerate the seriousness of the injury nor give false impressions of the disability. Plaintiff was allowed to exhibit his injured foot to the jury because the expert witness, Dr. Roth, recommended that the foot be exhibited so he could explain and point out to the jury the medical treatment performed on the injured area. Under these circumstances, the trial court did not abuse its discretion in allowing the plaintiff to exhibit his injured foot to the jury over defendant's objection.

Upon our examination of the record, we conclude that plaintiff's counsel's remarks and questions did not prejudice the defendant, the Borden Company, from a fair hearing on the issue of agency, nor were the questions improper as to substance.

 Many of the questions plaintiff's counsel directed at the witnesses at the trial were asked on cross-examination and pursuant to section 60 of the Civil Practice Act, Ill Rev Stats (1965), c 110, § 60, in an

attempt to elicit information germane to the issues of the case. On cross-examination wide latitude is allowed in questioning the witness. Meyer v. Williams, 15 Ill App2d 513, 146 NE2d 712 (1958). Plaintiff's counsel was not responsible for any misconduct as alleged by defendants which would necessitate the granting of a new trial.

■ ■ We now consider the defendant's contention that the verdict of $175,000 in this case is excessive. The trial court denied the defendant's post-trial motion for a new trial, regarding the excessiveness of damages, and such denial by the trial court of a motion to set aside a verdict claimed to be excessive is entitled to weighty consideration upon review. Barango v. E. L. Hedstrom Coal Co., 12 Ill App2d 118, 138 NE2d 829 (1957). The question presented is whether or not the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. In 2 ILP, Appeal and Error, § 782, it is stated:

"... the reviewing court will not disturb an award of damages unless the verdict is so excessive or palpably excessive as to indicate that the jury were moved by prejudice, passion, or improper motive, or so flagrantly outrageous and extravagant as to strike everyone with the enormity and injustice of it, or unless the award is not supported by the facts in the record and the court is convinced that it is excessive, or it is apparent from the record that the damages assessed are out of due proportion to the injury and the loss proximately resulting therefrom . . . ."

■ Although it is the aim of the law to attain a reasonable balance between the amount awarded as damages and the extent of the suffering, there is no precise rule by which an award of damages can be fixed in an action for personal injuries because such compensation

251

does not lend itself to mathematical computation. Barango v. E. L. Hedstrom Coal Co., 12 Ill App2d 118, 138 NE2d 829 (1957). While the determination of an award of damages is peculiarly within the province of the jury, the Appellate Court's power to review an excessive verdict has been acknowledged in Smith v. Illinois Cent. R. Co., 29 Ill App2d 168, 172 NE2d 803 (1961), where the court stated:

". . . this State has always followed the common-law rule that an excessive verdict could be and should be corrected in the Trial Court by remittitur or a new trial, and that a failure or refusal of the Trial Court to act in a proper case was error which should be corrected in the Appellate Court."

Goertz v. Chicago & N. W. Ry. Co., 19 Ill App2d 261, 153 NE2d 486 (1958) and Pitrowski v. New York, C. & St. L. R. Co., 6 Ill App2d 495, 128 NE2d 577 (1955), are in accord with this view. Plaintiff's doctor, medical and hospital bills were $9,504.05; his lost earnings from the date of the occurrence, December 1, 1964, to the approximate date of the trial, June 1, 1966, were $14,736. The life expectancy of plaintiff was shown at the trial to be 23.3 years, of which 16.4 years represented the period that plaintiff would have still been active in the labor force as a journeyman plumber until his retirement at age 70. Plaintiff's counsel calculated future lost earnings, reduced to a present cash value, at $120,785, making a total of past and future pecuniary loss in the sum of $145,061.05. However, this sum did not reflect that plaintiff conducted and supervised his own business, the Hygrade Plumbing Service, in addition to his activities as a journeyman plumber. Taking all this into consideration, together with all imponderable elements which might have been considered by the jury, and giving plaintiff the benefit of all doubt, we do not feel that the evidence

justifies a judgment of more than $150,000, and that the verdict of the jury was clearly excessive.

It is therefore ordered that if the plaintiff will, within 20 days, file in the office of the clerk of this court, a remittitur in the sum of $25,000, as of the date of the judgment, then that judgment will be affirmed for $150,000 as of the date of the original judgment; otherwise the judgment will be reversed and the cause remanded for a new trial on the issue of damages only.

Affirmed upon filing remittitur within twenty days; otherwise reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.