LESTER CLAMAGE, Plaintiff-Appellee, *v.* DONALD SHAPIRO, Defendant-Appellant.

First District (1st Division)   No. 63026

Opinion filed April 11, 1977.

Jerome H. Torshen, Ltd., and Stern & Rotheiser, both of Chicago (Jerome H. Torshen and Edward G. Wierzbicki, of counsel, for appellant.

Cooney & Stenn, of Chicago (Robert J. Cooney, of counsel), for appellee.

Mr. JUSTICE BUA delivered the opinion of the court:

This is an appeal by defendant Donald Shapiro from a judgment entered in the Circuit Court of Cook County on a jury's verdict of $20,000 in favor of the plaintiff, Lester Clamage. Defendant presents three issues for review: (1) whether a certain statement by the court in the presence of the jury on a contested material issue of fact was prejudicial error; (2) whether the impeachment of defendant by plaintiff's counsel on the issue of due care and counsel's comment in closing argument on defendant's veracity were prejudicial errors; and (3) whether plaintiff's counsel sought to imply the existence of insurance during closing argument to the jury. The relevant facts follow.

On April 17, 1972, while crossing Lawndale Avenue in the Village of Skokie, plaintiff was struck in the right leg by an automobile operated by the defendant. At the time of the accident the defendant was backing up in order to pull out of a parking space. As a result of being struck plaintiff suffered injuries to his right foot and hip which required surgery. Thereafter, plaintiff was required to wear specially designed shoes which compensated for swelling. In addition, plaintiff's big toe had curled under his other toes, causing him to limp.

Subsequently, plaintiff filed a personal injury action against the defendant in the Circuit Court of Cook County, and the case was tried before a jury. While the plaintiff was testifying on direct examination, the following colloquy occurred:

"Mr. Cooney [plaintiff's attorney]: Following the accident, before the accident, did you have a limp.

A: No, sir.

Q: Did you have that problem with your toe curling under the big toe before the accident?

A: No, sir.

Q: Do you still have that problem?

A: Yes, sir.

Q: Do you have a limp now?

Mr. Mavrias [defense counsel]: Objection, your Honor. That is the same area. He has answered no physical difficulties. Counsel didn't like the answer and he is asking—

Mr. Cooney: I like the answer, but the man doesn't complain. We have to drag it out of him.

Mr. Mavrias: He has answered it three or four times.

Mr. Cooney: Let him answer again in fairness to him. It is his case.

The Court: Proceed. The jury already knows he has a limp anyways, Mr. Cooney.

Mr. Cooney: Well, that's what I mean. You limp a little, do you?

The witness: Yes, sir."

Thereupon, defense counsel, *in camera*, moved for a mistrial based on the court's comment, in front of the jury, that the plaintiff has a limp. The court denied the motion and the trial proceeded. Various witnesses were called and eventually the defendant testified. He stated on direct examination that he backed his car up with his foot on the brake. Mr. Cooney then cross-examined defendant in relevant part as follows:

"Q: When you got into your car, you saw Mr. Clamage getting out of his car, is that right?

A: When I—pardon?

Q. When you got into your car, you saw Mr. Clamage getting out of his car.

A: When I got into—no.

Q: Isn't that what you said on your deposition?

Mr. Mavrias: Objection, Judge, that is not the proper way to ask him. He should read the question and read the answer.

The Witness: I saw Mr. Clamage once.

Mr. Mavrias: Mr. Shapiro, just a minute, Judge, that is not the proper form.

The Court: All right.

Mr. Cooney: Well, I will ask you: Did you see him getting out of his car as you got into your car?

A: I saw him out of the car, but I don't remember what terms, if it was when I got in or when I got out.

Q: Well, did you answer these questions under oath? I am on page 17.

'Was he in or out of the car?

I think, if my recollection is correct, he was just getting out.

And where were you in reference to your car, at that point,

when he was just getting out?
I was just getting into mine.'
Isn't that what you said?

A: That could very well be.

Q: But, didn't you say that?

A: It could very well be. I'm not trying to argue with you. Take a look at it.

Mr. Mavrias: He has answered he is not disputing that. He said that.

Mr. Cooney: Well, then, that is the fact, is that right?

A: I saw him once and that evidently was the time I saw him.

Q: All right. Now, for the first time you are telling somebody that you had your foot on the brake when you backed up.

Now, you tell us where that is shown in here.

Mr. Mavrias: That is improper.

Mr. Cooney: Show us where your foot was on the brake, sir.

A: I was never asked the questions, sir. If I was asked the question, I'd answer.

Mr. Mavrias: That is an improper thing and counsel knows it. I move for a mistrial.

The Court: All right. Your motion is denied. Proceed. * * *

Mr. Cooney: Well, you cannot categorize the manner in which you went back into this man, can you?

A. What do you mean I can't?

Q: As far as speeding.

A: Oh, yes, I can.

Q: Well, you were asked that question, and you couldn't categorize it under oath before.

Mr. Mavrias: Judge, the same objection. That is not the proper way to do it.

The Court: The objection is sustained.

Mr. Cooney: Let me ask you this question, sir, I am not trying to quarrel with you. I would just like you to be consistent. I am on page 23.

'Now, what was—can you categorize or describe for me how you backed up your car?
No.
All right.
I have no idea.'·

Isn't that what you told us under oath a couple of months ago?

A: But, if I was asked the question if I had my foot on the brake—

Q: You read the question.

A: My foot was always on the brake. I don't care what the questions says, I know what I did.

Mr. Mavrias: Objection.

The Court: You are objecting, and your objection is sustained.

Mr. Cooney: I am asking you to categorize the speed.

A: I don't care what that says.

Q: All right. If you don't care what it says under oath, I don't care.

A: When I back up a car, and I don't know who don't—

The Court: All right. There is no question pending. And if you are making an objection, it is sustained.

Mr. Cooney: In rebuttal, I would like to read into the transcript what the questions were under oath and the date and circumstances.

Mr. Mavrias: I am objecting to this procedure. I don't think it is proper.

The Court: All right. Your objection is sustained."

Subsequently, during closing argument to the jury, Mr. Cooney stated:

"I will tell you another thing in all honesty. I am bias in this case, and I am prejudice, because I like my client and I have been with him and I think he is right."

Continuing his argument, Mr. Cooney remarked:

"I called the defendant, Mr. Shapiro—and I have no gripes with him, and it is impersonal as far as I am concerned. This is a lawsuit, and there is a claim for damages. And there is nothing personal about it."

Defense counsel, Mr. Mavrias, commented during his argument:

"Now as Mr. Cooney indicated, he has some bias in this case. I don't think my client is at fault. Mr. Shapiro has bias in the case. And Mr. Clamage certainly has bias in the case. They each have something to gain or lose in this manner."

These comments drew the following response:

"Mr. Cooney: Objection to that comment. I move that the jury be instructed to disregard that someone has something to lose in this case.

The Court: Sustained.

Mr. Mavrias: Objection, your Honor.

The Court: All right. Proceed."

On rebuttal Mr. Cooney argued:

"* * * you are here to render a verdict in this case that will be fair and square. Now, we are not trying to take anything from someone. And don't be misled by that. There is nothing personal about this at all."

Counsel continued argument, commenting on the evidence concerning plaintiff's accident and said:

> "And does it make any difference whether he broke his hip by getting hit with the bumper or when he was trying to pull himself away and fell on the pavement? Don't be confused on that nonsense. And I am not being critical. Because, counsel has a job, and he is sent over here by his firm to hold down this verdict. And he does an excellent job. So don't be confused."

And, finally, the record reflects the following remarks of Mr. Cooney to the jury:

> "And I can say this: If you say as the voice and conscience of this community, that a man can get in a car and not keep a proper lookout and back up whether fast or slow and pin someone and hurt him to this extent, if you say he has done nothing wrong, well then I don't like this community.
>
> I don't think you are going to say that. Because, you know he was slightly careless in causing this man's injury, and it wasn't on purpose. And it is nothing personal. And that is what I think you are going to say."

Thereafter, the jury received their instructions from the court and began deliberations. Judgment was entered on the verdict and defendant appealed, as hereinbefore setforth.

Defendant initially ascribed error to the trial court's comment in the presence of the jury that, "The jury already knows he has a limp anyways * * *." As hereinbefore mentioned this comment was made in response to defense counsel's objection to certain questions asked plaintiff on direct examination. Defendant contends that this was an improper comment on a contested material issue of fact. We disagree.

Plaintiff had stated for the record that he now limps. Another witness, a fellow employee of the plaintiff, had previously testified that plaintiff now walked with a limp. In addition, the trial judge, in denying defendant's motion for a mistrial, noted that the jury had observed the plaintiff walking around the courtroom on several occasions prior to the court's remark. Quoting the court: "The jury would have to be absolutely the most unobservant group of people I have ever known not to notice that this man was limping pronouncedly as he walked back and forth in front of them and as he walked into the stand."

■■ We have examined the complained of remarks in their proper context and find them to be nonprejudicial in light of the fact that the jury had, prior to the court's remarks, heard testimony concerning plaintiff's limp and had occasion to observe the plaintiff as he walked around the courtroom. Wide latitude must be allowed the trial judge in conducting a trial. It is only where his conduct or remarks are of such a nature as would

ordinarily create prejudice in the minds of the jurors that they constitute reversible error. (*Piechalak v. Liberty Trucking Co.* (1965), 58 Ill. App. 2d 289, 208 N.E.2d 379; *Reske v. Klein* (1961), 33 Ill. App. 2d 302, 179 N.E.2d 415; *Taylor v. The Carborundum Co.* (1969), 107 Ill. App. 2d 12, 246 N.E.2d 898.) Here the trial court's remarks were not of such a nature as to create prejudice in the juror's minds.

Defendant's next contention is that his impeachment by plaintiff's counsel on the issue of due care was improper and counsel's comments thereon during closing argument constituted reversible error. Defendant contends that plaintiff's counsel failed to present any evidence inconsistent with defendant's testimony at trial that he applied the brakes while backing up. We do not agree.

■■ The rule in Illinois regarding impeachment by a prior inconsistent statement is that, once counsel has laid a foundation for impeachment, he is required to offer proof of the allegedly impeaching statement. (*Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491; *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 203 bn.E.2d 460.) The only exception to the aforestated rule occurs when the witness admits that he made the prior statement. (*Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159.) In the case at bar, the defendant stated on direct examination that he had his foot on the brake when he was backing up. Plaintiff's counsel, noting that this was the first time defendant said he had his foot on the brake, questioned defendant as to a prior statement at his deposition. There the defendant was asked if he could categorize or describe how he backed up his car and he answered, "No." The defendant then testified that he had never been asked at his deposition if he had his foot on the brake, though he said that if he were asked the question he would have answered it. This comment by the defendant was clearly a reference to his earlier deposition, and an admission that said deposition had in fact taken place. We hold this line of questions by plaintiff's counsel, when viewed together with defendant's answers and admissions, (as set forth more fully in the recitation of the facts) was sufficient compliance with the Illinois rules as stated in *Rigor* and *Logue*.

■■ Moreover, when construing the record as a whole, especially in light of the witness's rehabilitative testimony subsequent to counsel's reference to defendant's deposition, any error that may be reflected therein was harmless error, since the statements do no harm to the credibility of the witness. *Kelly v. Reynolds* (1971), 132 Ill. App. 2d 1098, 271 N.E.2d 370.

The record discloses that the defendant stated that he had his foot on the brake when he backed into the plaintiff, that he did not testify to this on his earlier deposition where he was asked to describe the manner in

which he backed up, and that he did not care what his earlier deposition said, because at trial he knew what happened on the day of the accident.

On closing argument, the attorney for the plaintiff commented:

> "Just a little while ago for the first time we heard that he [the defendant] had his foot on the brake and not the accelerator. Do you want to know what kind of car he was driving? On most of mine though, you move them when you put your foot on the accelerator. He also said he didn't care what he said under oath a few months ago. He doesn't think that was important. I think it is important. At any rate, that is what his testimony was in the case.
>
> * * *
>
> He told us a little while—he said something under oath—that he could not categorize the manner and speed in which he came back. He said he didn't care what he said under oath before."

With respect to closing arguments:

> "Counsel cannot state matters not in evidence, but can urge all reasonable inferences and conclusions which may be properly drawn from the evidence and wide latitude should be allowed." *Maguire v. Waukegan Park District* (1972), 4 Ill. App. 3d 800, 805, 282 N.E.2d 6, 9-10.

■■ We are of the opinion that it was permissible for plaintiff's counsel to state his conclusions as to defendant's statement that he did not care what he had said under oath a few months ago. Such a holding we believe is in consonance with the rule that wide latitude should be afforded counsel in urging reasonable inferences and conclusions during closing argument. See *Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 503, 317 N.E.2d 704, 709-10.

Defendant's final contention is that plaintiff's counsel sought to imply the existence of insurance during closing argument to the jury. Plaintiff's counsel stated during closing argument (as hereinbefore set forth in its entirety) that,

> "I called the defendant, Mr. Shapiro—I have no gripes with him, and it is impersonal as far as I am concerned. This is a lawsuit * * * And there is nothing personal about it."

It is axiomatic that in a personal injury action it is error to admit evidence of insurance protection. (*Guardado v. Navarro* (1964), 47 Ill. App. 2d 92, 197 N.E.2d 469.) However, the instant case is distinguishable from the leading cases cited by defendant in support of his position. (*Reed v. Johnson* (1965), 55 Ill. App. 2d 67, 204 N.E.2d 136, and *Ferrer v. Vecchione* (1968), 98 Ill. App. 2d 467, 240 N.E.2d 439.) In *Reed*, the court, at page 76, held counsel's remarks that "there is nothing personal about this * * * we are not going to have any personal concern, and the Johnson Bros. don't. There is nothing personal" clearly and deliberately

implied the existence of insurance. In *Reed,* unlike the case at bar, counsel's remarks were made in reference to the amount of the verdict. In *Ferrer,* counsel argued that the defendant's absence at the trial indicated his lack of concern in the outcome of the case. The court, in *Ferrer,* reasoned that such argument carried with it a strong implication of insurance. In the instant case, counsel's comments, when read in context, were clearly intended to negate any implication, in the minds of the jury, of a personal animosity existing between himself and the defendant.

■■ Moreover, counsel's later comment that defense counsel was sent over by his firm to hold down the verdict was proper argument.

■■ Counsel was merely rebutting the defense attorney's closing reference as to what damages should properly be assessed if the jury found his client liable. We hold that these comments did not constitute an improper insinuation that defendant had insurance. (See *Browning v. Johnson* (1971), 132 Ill. App. 2d 85, 267 N.E.2d 730.) At worst, plaintiff's counsel's remarks were uncertain or equivocal. Where remarks are equivocal and made only in response to argument by defense counsel no reversible error results. *Cupp v. Nelson* (1972), 5 Ill. App. 3d 37, 282 N.E.2d 513.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.