AMERIGO DE ROSA, Plaintiff-Appellee, *v.* ALBERT F. AMLING COMPANY, d/b/a Amling's Flowerland, Defendant-Appellant.

First District (4th Division)   No. 79-544

Opinion filed April 24, 1980.

Wiedner & McAuliffe, of Chicago (John P. McAuliffe and Richard J. Leamy, Jr., of counsel), for appellant.

A. Denison Weaver, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, injured while working on the job, sued the company for which he was working. The jury awarded $150,000 and the defendant has appealed. The sole issues before the court are whether the trial court should have ruled as a matter of law that the plaintiff was defendant's employee and not an independent contractor; whether the court erred in refusing the defendant's tendered instructions stating the factors to be considered in determining whether the plaintiff was an employee or an independent contractor at the time of the accident, and whether the cumulative effect of certain statements by plaintiff's counsel served to deny the defendant a fair trial. We find no error and affirm.

The plaintiff, Amerigo De Rosa, while working as a carpenter on premises owned by the defendant, Albert F. Amling Company, d/b/a Amling's Flowerland (Amling), a retail florist, along with his partner, Harold Kane, in the construction of interior fixtures in a new addition to one of Amling's retail outlets located in Rolling Meadows, Illinois, was injured on April 17, 1974. He filed suit against the defendant on December 31, 1974, alleging a violation of the Structural Work Act. (Ill. Rev. Stat. 1973, ch. 48, pars. 60 through 69.) In the complaint he alleged that he was an employee of De Kane Karpentry. The defendant did not deny this in its initial answer but stated that it did not know the relationship between De Rosa and De Kane Karpentry. It also did not deny that it had engaged De Kane Karpentry to erect and install certain equipment. Four years later, one month before trial, Amling amended its complaint alleging as an affirmative defense that De Rosa was its employee and therefore was barred by statute (Ill. Rev. Stat. 1973, ch. 48, par. 138.1 *et seq.*) from suing at common law. As already stated the jury found that De Rosa was not an employee but an independent contractor and awarded him $150,000.

I.

■■ Amling's first contention is that the trial court should have ruled as a matter of law that the plaintiff was its employee. It is well established in

Illinois that the question whether a person is an employee or an independent contractor is for the jury unless the relationship is so clear as to be undisputed. (*Donovan v. Raschke* (1969), 106 Ill. App. 2d 366, 246 N.E.2d 110; *Hedrich v. Borden Co.* (1968), 100 Ill. App. 2d 237, 241 N.E.2d 546.) Accordingly, it is necessary for us to examine the testimony on this point.

The plaintiff De Rosa testified that he first worked for Amling in 1972. Kane needed help because they were getting more work than he could handle. So Kane had De Rosa go with him. Prior to this Kane had other people work with him. At this time both he and Kane were employed full-time by Marcor Construction. Marcor went out of business in December 1973. Before this Kane was at the same time on Marcor's payroll and doing work for Amling. He was paid by Amling on an hourly basis. No deductions were taken out of the Amling paycheck.

After Marcor went out of business Amling asked De Rosa and Kane if they were interested in working on the Rolling Meadows project. They agreed. There was no difference in the pay arrangement for the Rolling Meadows job than for the previous one. There still were no deductions taken out of the salary checks. He did not receive any fringe benefits. Contributions were not made to the union welfare fund by Amling although De Rosa was a union member. De Rosa himself could not make these contributions since to make them one must be a company or a corporation.

De Rosa had several conversations with Wentland, Amling's executive vice president, with respect to making these contributions. Wentland pointed out that there was a lot of work to be done, and De Rosa and Kane were anxious to get steady employment. De Rosa asked him why wouldn't he get a union number, pay union wages and pay into the welfare fund. At another time Wentland told them he wanted them to join Amling's "family" for $8 an hour (at that time they were earning $10 an hour). Again De Rosa responded that if he would get a number at the union welfare fund, pay into the welfare fund, and pay union wages they would gladly do all the work for him. Wentland responded that he hated unions.[1]

Finally De Rosa and Kane decided to incorporate themselves so that they would be working for a corporation which could make the union contributions on their behalf. They informed Wentland of this and he agreed to increase their salary from $10 an hour to $11 an hour to form the corporation (the other carpenters on the job were receiving $10 an

---

[1] This last statement was stricken upon defendant's general objection. A general objection only goes to relevancy and defendant's refusal of De Rosa's offer was certainly relevant.

hour). Thereafter Articles of Incorporation were issued effective April 10, 1974 (seven days before the accident) in the name of "De Kane Karpentry, Inc." No checks were, however, issued to the corporation prior to the accident.

At the time De Rosa was working at Rolling Meadows, he worked 13 to 14 hours per day, 50 to 60 hours per week and did not work anywhere else, since he had no time to do so. There was nothing, however, except the work load, which prevented him from going out and getting additional work. Not surprisingly he did not advertise for any additional work. On cross-examination, he agreed that he never submitted a bid on the work, never submitted a purchase order of any kind, never wrote out a contract for a lump sum price and that he and Kane had no joint bank account. He also agreed that Paul Wentland was the only person who told him where to work, what was to be put up, what design was going to be followed and directed the progress of the work. He also agreed Wentland could have discharged him if his work had been "sloppy."

De Rosa's wife testified that after the accident she contacted Wentland about the hospital bills. He told her to call Jim Marra, his agent for Country Mutual Insurance who would explain to her why De Rosa was not eligible for workmen's compensation. Marra told her that her husband was not an employee of Amling, was not on its payroll but was working for himself. Thereafter the De Rosas contacted Charles Fiduccia, an attorney.

Fiduccia testified that Country Mutual claims specialist Harry Brown told him that De Rosa was not covered by the Workmen's Compensation Act since he was working for De Kane Karpentry. Fiduccia filed a claim under the Compensation Act to protect De Rosa's rights and later filed this tort action. The compensation proceeding is still pending and De Rosa has never received any compensation benefits including either the payment of medical bills or temporary total disability. The payment of temporary total disability payments usually is supposed to begin within one to two weeks following the injury.

Paul Wentland, the executive vice-president of Amling, was called by the plaintiff pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He testified that Amling's business is the retail sale of flowers and garden items as well as gifts. Wentland's duties included responsibility for any improvements or additions to the Amling locations. In 1974 an addition was made to the location at Rolling Meadows. Amling engaged an outside general contractor to construct the exterior, but decided to act as its own general contractor with respect to the interior work because it was cheaper. Accordingly Wentland engaged De Rosa and Kane on a time and material basis for the carpentry work (in fact Amling supplied the materials). While at trial he was rather vague as to his

knowledge of the relationship between De Rosa and Kane, in his deposition taken about six weeks before trial he had stated that he had been aware they had a 50-50 partnership.

When Wentland engaged them, he discussed with Kane the nature of the work to be done and showed him a drawing prepared by Concepts, Inc., which showed in general terms the nature of the interior work to be done. Wentland also asked Kane for some type of "gut feeling" as to how long certain projects would take.

Other carpenters also worked on the project. Two of these carpenters were not hired by Amling but through Kane. The number of hours that each carpenter worked was left up to Kane who had the power to discharge them. Wentland did not care how many hours they worked on a particular day as long as the work was done. They often worked more than 40 hours a week, working both during the hours the store was open and after working hours. Initially all four men were paid the same, but later Kane and De Rosa were paid $1 per hour more because they were "kind of the bosses." Wentland testified he was on the Rolling Meadows project every couple of days.

Neither De Rosa nor Kane were required to fill out an employment application. Likewise De Rosa was not required to "punch" a time clock but kept his own time on his own forms. At the close of each week Amling would issue a check to each carpenter based on the carpenter's records of time worked. The check would be drawn on an "asset" account rather than Amling's regular payroll account. This amount was not shown on Amling's income tax return as part of the payroll for salaries or wages. Wentland admitted that in connection with a lawsuit involving another alleged employee, William Kane, he stated in a deposition "Well, if he was an employee of ours, it would have been on a payroll check." No withholding was taken out of the weekly checks nor was a W-2 form ever sent. Plaintiff was not entitled to any of the fringe benefits which Amling employees receive and no contributions were made to the union welfare fund.

■ Plaintiff's counsel attempted to show that the amount of premiums charged for Amling's compensation policy was based on payroll and that the monies paid to De Rosa were not included as part of the payroll audit and were not included in the computation of the premium. We believe this evidence was improperly excluded. While it is true that an employee may be covered even though his salary was not included in computing the premium, nevertheless, the omission is evidence tending to show that Amling did not regard De Rosa as an employee.

Amling did not file the "employer's first report of injury" until six months after the accident, although the law required the report to be filed as soon as possible. After the question "how long are you employed?" a

question mark was placed although Amling keeps a record showing when employees were first employed. Likewise the question "Are his wages carried on your regular payroll books which a policy is based? [*sic*]" was left unanswered, as were the questions "Is he in the employ of a jobber or contractor?" and "Is injured an officer, a partner, or a manager?" and "In addition to wage reported, did employee receive board?" De Rosa did not receive any compensation benefits.

Wentland could not remember any conversation prior to De Rosa's accident where he requested he be placed on the payroll. He did not recall telling Mrs. De Rosa that Marra would explain why her husband was not covered by workmen's compensation. He agreed he gave her Marra's name.

Wentland testified that there was no written contract between Amling and Kane and De Rosa. In neither job did they submit a proposal of cost for doing the work. Wentland also testified he had the right to discharge Kane and De Rosa.

Amling called two witnesses, Marra and Harold Kane. Marra testified he did not remember any specific conversation with Mrs. De Rosa. Normally he would refer any such question to the claims department. Marra admitted he had not tried to see the claims file on this matter before testifying even though it was especially hard to remember a four-year-old telephone conversation about Amling because there were a great number of claims regarding that.

■ Harold Kane testified that he and De Rosa were employed as individuals by the defendant and that De Kane Karpentry, Inc., was not functioning as a corporation on the date of the accident. It was not listed in the telephone books. A bank account was in progress but "hadn't gotten through yet." After the accident, however, he received checks made out to De Kane Karpentry. Wentland told him what to do and what areas to work in. On cross-examination Kane agreed that he and De Rosa found the other two carpenters. He also agreed that there were no deductions for withholding or social security and no money was contributed by Amling to the carpenter's union. He admitted that about four or five months after the accident he signed a statement saying he and his partner were self-employed. This was before Kane's son William was injured on the job at Amling.[2] He also agreed that they had discussed the incorporation with Wentland before the accident. There was no need to advertise since they had no time to do any other work.

---

[2] Plaintiff's counsel was erroneously prohibited from showing Kane's bias in that he was suing Amling on Billy's behalf contending Billy had been an illegally employed minor; that Amling is contending Billy is not an employee, and that if Kane were to testify that they were not employees he would hurt his son's case since Billy was employed under the same circumstances and paid in the same manner as De Rosa.

II.

■ Amling contends that De Rosa should have been found to be its employee as a matter of law because Wentland directed what work was to be done; De Rosa was paid an hourly wage, not by the job; De Rosa never submitted a bid or a purchase order, or entered into a lump sum contract, or advertised for jobs; Wentland had the right to discharge him; and Amling furnished the materials. Such factors have evidentiary value and must be considered (*Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, ·297 N.E.2d 154), but they are not conclusive. (*Gunterberg v. B & M Transportation Co.* (1975), 27 Ill. App. 3d 732, 327 N.E.2d 528; *Hedrich v. Borden Co.* (1968), 100 Ill. App. 2d 237, 241 N.E.2d 546.) A painter or an attorney hired as an independent contractor may be paid by the hour and may be discharged if the work is unsatisfactory. It is common knowledge that a painter, if he initially furnishes materials, charges the customer for their cost. While the right to control the details, manner and method by which the work is done is perhaps the principal consideration (*Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, 297 N.E.2d 154; *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045, *appeal denied* (1977), 66 Ill. 2d 639; *Gunterberg v. B & M Transportation Co.* (1975), 27 Ill. App. 3d 732, 327 N.E.2d 528), we are not convinced Wentland exercised such control in this case or had the right to. It is true Wentland explained what was to be constructed and where and either approved or rejected the work done but this is true of anyone employing a craftsman such as a carpenter, painter or paperhanger. It was, however, Kane, not Wentland, who employed the other carpenters, and determined the hours to be worked. As the court remarked in *Alexander v. Industrial Com.* (1978), 72 Ill. 2d 444, 450-51, 381 N.E.2d 669, 671:

"In the instant case it is clear that the respondent did not undertake to control or supervise the details of the work done by claimant. The evidence is undisputed that he simply showed the claimant the garage door and accepted the claimant's word that he could repair it. He then gave the claimant $20 and left the premises. He had given no instructions as to how to perform the work, how long the claimant had to work, or when he should quit. He was interested only in the result to be attained. It was the claimant who had complete discretion and control over the method and means by which to attain the result.

Claimant argues that the respondent, while not exercising actual control over the details of the job, had the right to do so, and that such a 'right to control' by the respondent supports a finding of employee-employer relationship. This argument is untenable. There is no evidence in the record that respondent had the right to control the method or manner of work done by the claimant. The

simple fact of the matter is that the respondent, a funeral director, hired claimant, a skilled carpenter, to perform a task wholly within the claimant's expertise, and totally outside the scope of his own business.

This case is factually quite similar to *Coontz*, where the court stated:

'Looking first to the task performed itself, it was quite apart from the regular business of Coontz [respondent] and it is also apparent that [claimant] was summoned to the home because of his particular skill and experience in splicing heavy ropes. * * * [Claimant] was called upon to do a particular job and while it is true that Coontz [respondent] did participate in a discussion and made a decision as to what the ultimate job would be, *i.e.*, splicing the rope or replacing it, the former was left alone to do the work in any manner he chose, being answerable to Coontz only as to the end result and not as to the means by which it was to be accomplished.' (19 Ill. 2d 574, 578.)"

In any event, it is clear that if the jury believed De Rosa's testimony it could not have found him to be an employee since he and Wentland never agreed that he should be an employee of Amling. The relationship of employee and employer is a product of mutual assent. (*Board of Education v. Industrial Com.* (1972), 53 Ill. 2d 167, 290 N.E.2d 247.) As stated by the court in *McHugh-Brighton v. Industrial Com.* (1969), 42 Ill. 2d 52, 56, 245 N.E.2d 480, 482:

"The definition of 'employee' in the Workmen's Compensation Act makes it clear that the basis of the relationship is a 'contract for hire, express or implied, oral or written, * * *.' (See Ill. Rev. Stat. 1963, ch. 48, pars. 138.1(a)2, (b)2.) The existence of such a relationship is determined by an application of the principles that govern other contracts. (*Crepps v. Industrial Com.* (1949), 402 Ill. 606, 614.) One does not enter the employ of another without at least an implied acquiescence in the relationship. As has been pointed out, 'to thrust upon a worker an employee status to which he has never consented * * * might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.' 1A Larson, Workmen's Compensation Law §47.10, pp. 753-54. See also *id.* §48.10, pp. 812-16."

De Rosa testified that when Wentland suggested De Rosa become an employee De Rosa agreed if Amling would pay into the union welfare fund but Wentland refused.

Other evidence also supports the conclusion that neither party regarded De Rosa as an employee. Amling did not pay De Rosa out of its

payroll account, although Wentland stated in the depositions in the Kane case that if Kane was an employee he would have been paid out of payroll. It did not provide the usual employee fringe benefits. Likewise, it did not withhold either income tax or social security, all of which was required by law if he was an employee. It did not include the amount paid to him in the amount used for the computation of the workmen's compensation premium. After the accident it denied he was an employee and refused to pay the benefits to which he was entitled if he was an employee. De Rosa and Kane started a corporation, an act difficult to explain if they believed themselves to be employees of Amling.

■■ The evidence considered as a whole overwhelmingly supports the jury's conclusion that De Rosa was an independent contractor. Accordingly, the trial court did not err in refusing to rule that De Rosa was, as a matter of law, an employee of Amling.

## III.

The defendant next contends that it was prejudicial error for the court to refuse to give any of the following proffered instructions:

### A.

"The plaintiff has the burden of proving each of the following propositions:

First, that the defendant was the person having charge of the alteration of the structure in question.

Second, that the defendant acted or failed to act in one or more of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting or failing to act the defendant violated the Structural Work Act.

Third, that the plaintiff was injured and sustained damages.

Fourth, that a violation of the Structural Work Act by the defendant was a proximate cause of the injury and damage to the plaintiff.

In this case, the defendant has asserted the affirmative defense that the plaintiff was at the time of the occurrence the employee of the defendant and that pursuant to the Illinois Workmen's Compensation Act, he is barred from suing his employer in this Court and may only recover damages from his employer for injuries sustained in the course of his employment by a proceeding for workmen's compensation before the Industrial Commission.

The defendant has the burden of proving this defense.

Probably the most important element in determining whether an employer/employee relationship exists, is the degree of direction and control exercised by the defendant over the plaintiff. Direction and control of the plaintiff by the defendant suggests an employer/employee relationship.

Also important is whether the defendant had the right to discharge the plaintiff. The right to discharge suggests an employer/employee relationship.

Also whether the plaintiff is paid by a lump sum or by an hourly wage is important. Payment by an hourly wage, rather than a lump sum suggests the existence of an employer/employee relationship.

Whether or not the defendant provides the materials used by the plaintiff in his work is also important.

If the defendant provides the materials used by the plaintiff in his work, this also suggests an employer/employee relationship.

Whether the plaintiff is answerable to the defendant for the details of his work, rather than only for the end product of his work, this also suggests an employer/employee relationship.

Whether the work performed by the plaintiff bears a kinship to the business of the defendant also bears on whether or not an employer/employee relationship exists.

If you find from your consideration of all the evidence that each of the propositions required of the plaintiff has been proved and that the defendant's affirmative defense has not been proved, then your verdict should be for the plaintiff. If, on the other hand, you find from your consideration of all the evidence, that any one of the propositions the plaintiff is required to prove has not been proved, or that the defendant's affirmative defense has been proved, then your verdict should be for the defendant.

### B.

In this case the defendant has asserted the affirmative defense that the plaintiff was at the time of the occurrence the employee of the defendant engaged in the line of his duty as an employee and that pursuant to the Illinois Workmen's Compensation Act, he is barred from suing his employer in this court and may only recover damages from his employer for injuries sustained while engaged in the line of his duty as an employee by a proceeding for Workmen's Compensation before the Industrial Commission of Illinois.

The defendant has the burden of proving this defense.

To determine whether or not the plaintiff was an employee of the defendant at the time of the occurrence, you must weigh the following factors:

First, whether the defendant directed and controlled the work done by the plaintiff;

Second, whether the defendant had the right to discharge the plaintiff;

Third, whether the defendant furnished the materials used by the plaintiff;

Fourth, whether the defendant controlled the manner in which the work was done by the plaintiff;

Fifth, whether the plaintiff is paid on a time basis or by the job.

C.

In determining whether plaintiff was an employee of the defendant at the time of the occurrence, you shall consider the following factors:

First, whether the defendant directed and controlled the work done by the plaintiff;

Second, whether the defendant had the right to discharge the plaintiff;

Third, whether the defendant furnished the materials used by the plaintiff;

Fourth, whether the defendant controlled the manner in which the work was done by the plaintiff;

Fifth, whether the plaintiff is paid on a time basis or by the job.

Whether the plaintiff was an employee of the defendant at the time of the occurrence is for you to determine."

In general, words of common usage and understanding need not be defined or explained in instructing the jury (*Moran v. Tomita* (1977), 54 Ill. App. 3d 168, 369 N.E.2d 302, *appeal denied* (1978), 71 Ill. 2d 599), since further attempts at definition can only lead to confusion and error. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) We need not decide, however, if an accurate instruction defining "employee" could have been given, since we hold that the three offered by Amling were misleading and confusing.

The first instruction misstates the law in stating that the presence of a single specified factor suggests an employer/employee relationship. All three proffered instructions are improper because they unduly emphasize particular matters by singling them out and giving them undue prominence and ignoring other factors (compare *Herbolsheimer v. Herbolsheimer* (1977), 46 Ill. App. 3d 563, 361 N.E.2d 134; *Department of Public Works & Buildings v. Tinsley* (1970), 120 Ill. App. 2d 95, 256 N.E.2d 124), such as the agreement of the parties, the failure of Amling to take any deductions out of the pay or to fill out a W-2 form,[3] etc. All of the agreements, acts and understandings of the parties must be considered, not just some. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045, *appeal denied* (1977), 66 Ill. 2d 639.) For the same

---

[3] Amling argues that such failure is not conclusive as to the nonexistence of an employer-employee relationship. This is correct. (*Kirkwood Brothers Construction v. Industrial Com.* (1978), 72 Ill. 2d 454, 381 N.E.2d 697; *Penny Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 217, 326 N.E.2d 393.) But it tends to show the intent of the parties. Compare *Alexander v. Industrial Com.* (1978), 72 Ill. 2d 444, 381 N.E.2d 669.

reason, the instructions were misleading. (*Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692, *appeal denied* (1978), 71 Ill. 2d 603.) Furthermore, the instruction did not state that the factors mentioned were not conclusive. In addition the instructions erred in referring merely to the right to control and not to the right to control the details, manner and method by which the work is to be done.

■■ We are aware that the factors listed are those enumerated in certain court decisions. The practice of lifting sentences from court opinions and converting them into instructions, however, is not a good one, as it often leads to serious error. *Strom v. Lipschultz* (1972), 5 Ill. App. 3d 308, 282 N.E.2d 257, *appeal denied* (1972), 52 Ill. 2d 597; *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392, 235 N.E.2d 323, *appeal denied* (1968), 38 Ill. 2d 629; 35 Ill. L. & Prac. *Trial* §196 (1958).

### IV.

Finally, Amling contends that certain conduct by De Rosa's counsel deprived it of a fair trial.

■■ Amling complains that it was prejudiced by the following questioning which implied the witness was hiding something:

"Q. And you were told by your attorney at the time I took your deposition that I had requested you to produce certain documents, among which were any W-2 forms or 1099 forms given to Mr. De Rosa?

MR. McAULIFFE: I object to any conversation between this man and his attorney as a privileged communication.

THE COURT: Sustained.

MR. WEAVER: Alright.

THE COURT: Strike that question.

MR. WEAVER: Q. The treasurer reports to you, does he not, Mr. Wentland, as Executive Vice-President?

THE WITNESS: A. Not just to me.

Q. But he reports to you, right?

MR. McAULIFFE: Well, object to the form of the question, reports, I don't know what that means, Judge.

THE COURT: Sustained.

MR. WEAVER: Q. Well, are you his superior officer in the company?

THE WITNESS: A. I'm a superior officer, yes.

Q. And who else does he report to besides you?

MR. McAULIFFE: Object. The question assumes that he reports. I don't know what that means.

MR. WEAVER: Q. Well, is he responsible to you?

THE WITNESS: A. Yes, and someone else.

l9.

Q. And you have access to his records, don't you, if you wanted to see his records as an executive of the company?

A. Yes.

Q. And you knew you were coming to court today, didn't you?

A. Yes.

Q. Did you bother to ask him if they had any, the treasurer, any W-2 forms or copies?

MR. McAULIFFE: Object. There was no demand made for any of those forms to be produced here today, Judge, absolutely none.

THE COURT: Objection sustained.

MR. McAULIFFE: And would you have the jury disregard that comment by Mr. Weaver to suggest that we're hiding some forms?

THE COURT: Disregard the comment.

MR. WEAVER: I'm not suggesting anything.

MR. McAULIFFE: You did just now, Mr. Weaver.

MR. WEAVER: Q. No, I didn't. If you wanted to, you could have found out if there were any such forms in existence, isn't that right?

MR. McAULIFFE: Object to that.

THE COURT: Sustained.

MR. WEAVER: Q. Well, did you bring any such forms with you?

MR. McAULIFFE: Object to that, It's unbelievable that he persists in that kind of question."

This questioning was prompted by the fact that Wentland had suddenly, after testifying both in his deposition and at trial that no W-2 had been sent, reversed himself and said it might have been sent. Under those circumstances, De Rosa's attorney was entitled to show the improbability of this testimony by establishing that Wentland had access to the information and could have resolved any doubt.

Amling also complains of counsel's inquiry of Kane that he had brought suit against Amling on behalf of his son on the grounds he was an illegally employed minor. As we have already noted, we believe this question was proper as tending to establish bias and explain why Kane had changed his position from that in a prior statement. Even if it had been improper, however, after the court sustained Amling's objection and instructed the jury to disregard the statement, no further mention of the subject was made in the jury's presence.

■■ Amling further objects to the introduction into evidence of a "brutally, graphic color photograph" of the injury. Such photographs are, however, admissible within the discretion of the trial court. (*Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 317 N.E.2d 704; *Hedrich v. Borden Co.* (1968), 100 Ill. App. 2d 237, 241 N.E.2d 546.) We find no abuse of discretion here.

■■ ■ The subject of both liability and compensation insurance was introduced at the trial by Amling. However Amling objects to the following remarks made in plaintiff's closing argument:

"Now, the argument can be made, 'Well, if we had made those payments and it turned out that he wasn't our employee, how are we going to get our money back?'

It's a good argument. Where is the money going to come from? It's already spent.

Not in this case. There's a letter which the defendant himself introduced into evidence.

And what does that letter say, written to Mr. Fiduccia? It's from the Country Companies, the Country Insurance Companies.

And what does it say? 'We are the insurance company for both workmen's compensation and liability insurance,' so whether they pay in the workmen's comp proceeding or they pay it here, it all comes out of the same pocket, so * * *.

\* \* \*

Now, I ask you, why in the world—why in the world—why in the world would Amling's after four years of paying nothing all of the sudden a month before this case is going to be tried, why would they say—why would they say, 'Well, this action is barred because he comes under workmen's comp'?

Why would they say that after four years ago they said he's not and didn't pay anything?

I suggest to you that the reason is the same reason why they furnished ladders rather than proper scaffolding, why they didn't give the work to Marathon Contractors, like they should have.

Because it's cheaper to pay compensation benefits than it is to pay the damages which Mr. De Rosa is entitled to under the common law.

That's the answer in a nutshell * * *."

We find that under the circumstances these remarks were fair comments on the evidence and as such were not improper. (*Clamage v. Shapiro* (1977), 48 Ill. App. 3d 90, 365 N.E.2d 471; *Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34, *appeal denied* (1975), 58 Ill. 2d 597; *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 305 N.E.2d 617; *Walls v. Jul* (1969), 118 Ill. App. 2d 242, 254 N.E.2d 173.) Furthermore, no objection was made at the time; accordingly any error was waived. *McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708; *Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E.2d 306, *appeal denied* (1978), 71 Ill. 2d 617; *Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 372 N.E.2d 385, *appeal denied* (1978), 71 Ill. 2d 603; *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.

We agree with defense counsel that plaintiff counsel's remark in closing argument that he would not be surprised if some Federal statute or regulation makes it a crime not to withhold from employees went beyond the scope of fair argument. Nevertheless, the error was cured by the court's striking of the statement and instructing the jury to disregard it. *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697; *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 365 N.E.2d 360.

Each of these matters was considered by the trial court in passing on Amling's post-trial motion and was rejected. As we stated in *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 390 N.E.2d 97, each verdict for personal injury must be examined with deference to the discretion of the jury making its determination and in a court of review the discretion of the trial judge in ruling on the post-trial motion is entitled to the same deference.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

LINN, P. J., and JOHNSON, J., concur.